Argued and submitted May 15, 1995, affirmed February 21, petition for review allowed April 30, 1996 (323 Or 153)

STATE OF OREGON,
*Respondent,*

*v.*

LEWIS EDWARD LARSON, JR.,
*Appellant.*

(90-3674-C-3; CA A76276)

911 P2d 953

Jay Edwards argued the cause and filed the brief for appellant.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Defendant appeals two convictions for aggravated murder, ORS 163.095. He raises numerous assignments of error. We affirm, writing only to address defendant's argument that the trial court erred in denying his motion to exclude witnesses during trial.

On December 29, 1989, defendant was pulled over for a traffic stop, but he escaped from the police. Additional investigation revealed an outstanding warrant for defendant's arrest for a parole violation. Police officers questioned defendant's father, Lewis Sr., and brother, Darin, as to his whereabouts. Lewis Sr. and Darin spoke to the officers only on a promise of anonymity, because they were afraid of defendant. They told the officers that defendant probably could be found in one of several local bars. Police located defendant and arrested him at one of those bars. Defendant asked the officers if his father or brother had told them where he could be found. One officer later testified that defendant said that if he found out, he would "take care of it." Defendant was released from custody on January 18, 1990.

Darin, who lived with Lewis Sr., was last seen alive by a neighbor on January 25, 1990. The following day, another neighbor saw defendant driving his father's brown Toyota truck; the neighbor thought that was unusual, because Lewis Sr. never allowed defendant to drive the truck. The day after that, defendant was seen attempting to sell a revolver and other personal property that belonged to his father.

On January 28, 1990, an officer on game patrol in a rural area discovered tracks indicating that someone had pulled to the side of the road overlooking a ravine and had thrown something over the edge. Upon further investigation, the officer discovered a couch cushion, a mattress and a mattress cover that were rolled up and tied with electrical cord, newspapers and other items, all soaked in fresh blood. The officer also found a paper advertisement addressed to Lewis Sr. The officer took the stained items to the lab for further examination.

On January 30, 1990, police officers searched Lewis Sr.'s home and discovered, among other things, blood spatterings on the floor and walls, and couch cushions, electrical cord, mattresses and sheets matching those found in the ravine.

A police officer went to defendant's residence and saw defendant arrive in the brown Toyota truck. When defendant saw the officer, he fled. Police eventually stopped defendant and questioned him about his father and brother. Defendant reported that he had recently taken both of them to the bus station, from which they had left for a trip to Reno, Nevada.

Ten months later, a hunter discovered the remains of two male bodies in a ravine. One of the bodies was positively identified as that of Darin. The other body was too decomposed and scavenged by animals to allow a positive identification, but it generally met the description of Lewis Sr. Defendant was arrested and charged with the aggravated murder of his father and his brother.

During trial, as the prosecutor completed direct examination of the state's second witness, defendant moved to exclude witnesses. The following colloquy took place:

"Defendant:    * * * Should I make a motion to exclude the witnesses out of the courtroom?

"The court:   You could have, but you haven't.

"Defendant:   Okay, can I make that motion now?

"Prosecutor:   I'd object, Your Honor. It's too late. Those are supposed to be made before trial starts.

"Defendant:   There has only been two witnesses.

"The court:   Do you have any real objections to it?

"Prosecutor:   I suppose not.

"The court:   Well, hey, if you have an objection, I'll hear you.

"Prosecutor:   Well, the court has heard it. I —

"The court:   It's true, it is late. It's not timely. Very well, we'll follow the rules. It's not timely. It has to be made at that point, and it's too late."

The trial then proceeded, with the state calling more than 40 witnesses. In addition to the foregoing facts, the evidence at trial showed that no one at the bus station had sold Lewis Sr. and Darin bus tickets to Reno or had seen them take any bus out of town; hair samples in the blood and other objects at Lewis Sr.'s house and at the ravine were defendant's; tire treads at the ravine were consistent with those of the Toyota truck defendant was driving the day after the victims disappeared; blood in the vehicle matched that of one of the victims; and defendant had made incriminating statements to one of his jail cellmates while awaiting trial. The jury found defendant guilty, and he was sentenced to life imprisonment without the possibility of release.

On appeal, defendant assigns error to the trial court's denial of his motion to exclude witnesses. According to defendant, it is an abuse of discretion to refuse to exclude witnesses without cause. Defendant argues that the court's error gives rise to a presumption of prejudice, which the state cannot overcome, because too much of the state's testimony was cumulative or overlapping. The state argues that the trial court did not err, because defendant's motion to exclude witnesses was not timely made. The state acknowledges that, if the court did err in denying the motion, a presumption of prejudice arises. It argues, however, that the cases recognizing such a presumption are incorrect and should be overruled. In the alternative, the state argues that the presumption in this case has been overcome, because any overlap or repetition in the testimony was about background or collateral matters not germane to the jury's verdict.

We review the denial of a motion to exclude witnesses for an abuse of discretion. *State v. Kendrick*, 239 Or 512, 518, 398 P2d 471 (1965); *State v. Roberts*, 47 Or App 323, 614 P2d 139 (1980).

OEC 615 provides:

"At the request of a party the court may order witnesses excluded until the time of final argument, and it may make the order of its own motion."

In *State v. Cetto*, 66 Or App 337, 674 P2d 66, *rev den* 296 Or 712 (1984), we held that OEC 615 " 'require[s] the exclusion of witnesses upon proper motion, absent a showing of good cause for not excluding them.' " *Id.* at 339 (citations omitted). In that case, the defendant moved to exclude witnesses as the state conducted direct examination of its first witness, and we held that the lateness of that motion was not, in itself, "good cause" for denying the motion. *Id.* In this case, defendant moved to exclude witnesses during the state's examination of its second witness. We find no principled basis for holding that waiting until the state's first witness to move to exclude witnesses does not constitute good cause for denying the motion, whereas waiting until the state's second witness does. The state identifies no other basis for denying defendant's motion to exclude witnesses. We conclude that the trial court's denial of the motion was error.

■     The question, then, is whether that error requires reversal of defendant's conviction. In *State v. Bishop*, 7 Or App 558, 492 P2d 509 (1972), a case that arose before the adoption of the Oregon Evidence Code, we held that the erroneous denial of a motion to exclude witnesses raises a presumption of prejudice. We cited no authority for that proposition, but summarily concluded that it is "the better rule" to "assume prejudice unless the record affirmatively reflects the contrary." *Id.* at 565. In *Cetto*, we invoked *Bishop* and held that the presumption of prejudice applies even under the Oregon Evidence Code. *Cetto*, 66 Or App at 340. We did not analyze the language of the applicable rules nor did we determine whether such a presumption was intended to be adopted. Since *Cetto*, we have continued to apply the presumption of prejudice. *See, e.g., State v. Stookey*, 119 Or App 487, 490, 850 P2d 1167, *rev den* 318 Or 26 (1993). We now consider whether that practice should be continued.

Whether a court's erroneous denial of a motion to exclude witnesses as provided in OEC 615 raises a presumption of prejudice presents a question of statutory construction. In other words, regardless of whether a presumption of prejudice is "the better rule," the question is whether the legislature, in fact, adopted that rule when it enacted the

Oregon Evidence Code. In construing statutes, our charge is to ascertain the legislature's intentions, examining the text in context and, if necessary, the legislative history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). The text, which is generally regarded as the best evidence of the legislature's intentions, *id.*, says nothing about a presumption of prejudice attaching to a trial court's erroneous failure to grant a request to exclude witnesses. The context, however, does. OEC 103(1) provides, unambiguously, that "[e]vidential error is *not* presumed to be prejudicial." (Emphasis supplied.)

■     We are aware of the fact that the quoted sentence applies to "evidential" error. The term "evidential," however, is defined as "being, relating to, or affording evidence." *Webster's Third New International Dictionary* 789 (1976). The exclusion of witnesses certainly is related to evidence. The Code itself provides a list of rules to which OEC 100 to 412 do not apply, and OEC 615 is not among them. OEC 101(4). It is apparent, therefore, that the legislature intended OEC 103(1) to apply to OEC 615.

Moreover, the Oregon Constitution affords no room for a judicially-created presumption of prejudice. The Supreme Court has clearly held that

> "Article VII (Amended), section 3, of the Oregon Constitution requires this court to affirm judgments of lower courts if, in the opinion of this court, the judgment achieved the correct result, even if error was committed."

*State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988); *see also State v. Walton*, 311 Or 223, 230, 809 P2d 81 (1991). We conclude, therefore, that our previous cases applying a presumption of prejudice arising from a failure to exclude witnesses were in error.

■     In *State v. Hansen*, 304 Or 169, 743 P2d 157 (1987), the Supreme Court held that, to establish reversible evidential error pursuant to OEC 103(1), a defendant must show that a substantial right was affected by the error. The court explained that

> "a substantial right of a criminal defendant is not affected if * * * there is substantial and convincing evidence of guilt

and * * * little likelihood that the error affected the verdict."

*Hansen,* 304 Or at 180. We conclude that, in the light of the facts described above, there is substantial and convincing evidence of defendant's guilt. We turn, then, to an examination of the likelihood that the trial court's error affected the jury's verdict.

Defendant complains that, in several respects, the testimony of various witnesses overlapped or was cumulative. He contends, for example, that each of three officers testified to events surrounding his arrest on December 29, 1989. Those witnesses, however, had previously testified to the same facts at an earlier suppression hearing, at which defendant did not move to exclude witnesses. It is difficult to understand how defendant could have been prejudiced at trial under those circumstances.

Defendant similarly complains that four other officers testified about the events surrounding his arrest on January 30, 1990. We have carefully reviewed the testimony of the officers and conclude that they testified about different facts in the sequence of events; there is no material overlap in their testimony.

Defendant also argues that he was prejudiced by the fact that two of the state's expert witnesses were permitted to listen to one another's testimony. Both witnesses, however, testified from reports that they had prepared before trial. Moreover, the two experts performed different tests of different blood samples recovered from different items found at the ravine and elsewhere.

Defendant similarly argues that in other respects, witnesses were allowed to listen to one another's testimony, and that, in some unexplained way, that harmed his case. In each instance, however, the witnesses either testified about different events or testified about matters that pertained only to background or collateral issues. A detailed recitation of that testimony would benefit neither bench nor bar.

We conclude, therefore, that, although the trial court erred in denying defendant's motion to exclude witnesses, defendant has failed to demonstrate that a substantial right was affected by the error.

Affirmed.