Argued and submitted November 7, 1996, decision of the Court of Appeals and judgment of the circuit court affirmed March 6, 1997

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## LEWIS EDWARD LARSON, JR.,
*Petitioner on Review.*

## (CC 90-3674-C-3; CA A76276; SC S43140)

933 P2d 958

Jay Edwards, Salem, argued the cause and filed the petition for petitioner on review.

Thomas A. Balmer, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Kaye E. Sunderland, Assistant Attorney General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.

GRABER, J.

Fadeley, J., filed a specially concurring opinion.

## GRABER, J.

A grand jury indicted defendant for aggravated murder, ORS 163.095, in the deaths of his father and stepbrother. Defendant defended himself *pro se*, with the assistance of a court-appointed legal adviser. A jury convicted defendant of two counts of aggravated murder. He was sentenced on each count to life imprisonment without the possibility of release or parole, pursuant to ORS 163.105(1)(b). The trial court ordered the sentences to run consecutively.

Defendant appealed his convictions to the Court of Appeals, asserting nine assignments of error. The Court of Appeals affirmed the convictions. *State v. Larson*, 139 Or App 294, 296, 911 P2d 953 (1996).

We allowed defendant's petition for review, but limited review to only two assignments of error. The first assignment is that the trial court erred when it denied defendant's motion for a mistrial based on a comment by the prosecutor about defendant's state and federal constitutional right to remain silent. The second assignment is that the trial court erred when it denied defendant's motion to exclude witnesses from the courtroom. For the reasons that follow, we affirm.

### MOTION FOR MISTRIAL

Both the Oregon Constitution and the United States Constitution guarantee a criminal defendant the right to remain silent.[1] In this case, the prosecutor commented about defendant's failure to testify, in the following circumstances.

Defendant was questioning a police officer on direct examination about statements made by witnesses whom the officer had interviewed. After sustaining a hearsay objection by the prosecutor, the court explained:

"[DEFENDANT]:    Why is it hearsay? He's right here.

---

[1] Article I, section 12, of the Oregon Constitution, provides in part: "No person shall * * * be compelled in any criminal prosecution to testify against himself."

The Fifth Amendment to the United States Constitution provides in part: "No person * * * shall be compelled in any criminal case to be a witness against himself." The Fifth Amendment privilege against self-incrimination is made applicable to state criminal proceedings through the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 US 1, 8, 84 S Ct 1489, 12 L Ed 2d 653 (1964).

"THE COURT: Well, it's an out of court statement offered in court for the truth of the matter asserted. That's hearsay."

Soon thereafter, defendant asked the officer:

"Can you tell me where I was between the 18th and the 30th of January, 1990 and use that [report] to refresh your memory?"

The following exchange ensued:

"[PROSECUTOR]: I'm going to object to the testimony based on hearsay. It's from various witnesses. We've already had them on the stand.

"THE COURT: What are you getting at, [defendant]? What do you want to present to this jury?

"[DEFENDANT]: Just a second.

"([Defendant] conferred with his [legal adviser].)

"(BY [DEFENDANT])

"Q Okay, so did you develop any information that I was at Wylie's on January 25th?

"A Yes.

"Q And how did you develop that?

"A I don't recall.

"Q Was it from her police statements?

"A I assume so.

"[PROSECUTOR]: We still have the same problem, Your Honor.

"THE COURT: Well, he said he didn't recall. We have to take the answer. He doesn't know. He has what he has there. I take it you don't have any independent recollection beyond that.

"THE WITNESS: Correct.

"(BY [DEFENDANT])

"Q Did you develop any information that I was at the victims' residence on the evening of January 25th?

"[PROSECUTOR]: Your Honor, if [defendant] wishes to call whoever he wants to call to prove that he was at that residence, that's fine, but he's asking Detective Wright, and Detective Wright has interviewed people who have said to Detective Wright he was there or no he wasn't there.

"THE COURT: I take it you're reading from a police report submitted by the Detective.

"[DEFENDANT]: Yes.

"THE COURT: And this is his investigation.

"[DEFENDANT]: I'm not reading the knowledge. He has it.

"THE COURT: Well, it doesn't matter. He submits a report, this is what he did, he is presenting this to the District Attorney's office, and you're objecting that it's hearsay?

"[PROSECUTOR]: It's hearsay. It's based all on witness interviews. He has no personal knowledge.

"[DEFENDANT]: Well, they told him.

"THE COURT: The objection is sustained.

"(BY [DEFENDANT])

"Q So you didn't develop any knowledge that I was at the victims' house on the 25th? You have no knowledge of that?

"THE COURT: I've ruled on that. Next question."

Next, defendant questioned the police officer about a statement made by a now-deceased person whom the officer had interviewed. The statement pertained to a possible alibi for defendant. The prosecutor objected that the testimony relating what the deceased person had told the officer was hearsay. This exchange took place:

"Q [BY DEFENDANT]: And you made that report on 4-16-90. Did you find somebody that remembered seeing me on the 25th?

"A That remembered seeing you?

"Q Yes.

"A Did I talk to somebody?

"Q   Yes.

"A   No.

"Q   You didn't interview Carleena Wilson and she tell you that —

"[PROSECUTOR]:   Objection, Your Honor.

"THE COURT:   Sustained.

  "([Defendant] conferred with his [legal adviser].)

"(BY [DEFENDANT])

"Q   Did you interview Carleena Wilson in this case?

"A   Yes.

"Q   And you've already said that she was with me in the car?

"[PROSECUTOR]:   Your Honor, it calls for hearsay.

"THE COURT:   Once again, sustained.

"[PROSECUTOR]:   Your Honor, *I'd like the court to warn the defendant about trying to get in objectionable material by testifying to it himself.* Of course, the State has objected numerous times on these grounds.

"THE COURT:   Well, he has heard you, I take it. [The prosecutor] *is* correct.

"[DEFENDANT]:   Well, Your Honor, I gave the District Attorney notice of an alibi, and —

"THE COURT:   That's fine. You can call people to tell the jury where you were and that you weren't there and you couldn't possibly have committed the crime because you weren't present. That's what alibi is. But you can't do it this way. They need to be here and they need to be subject to cross examination or an exception to the hearsay rule, and I can think of none in this instance.

"[PROSECUTOR]:   *[Defendant] can always get up and testify himself if he wants to establish alibi.*

"[DEFENDANT]:   Your Honor, the party I was with is deceased.

"THE COURT: That's true, and that happens. Life is like that. It's unfortunate the lady got killed in an automobile accident." (Emphasis added.)

After further discussion about the state's hearsay objection, defendant again consulted with his legal advisers. Out of the jury's presence, the following colloquy then occurred:

"[DEFENDANT]: Okay, they suggest that I move for a mistrial based on [the prosecutor's] comment that I could take the witness stand if I wanted to testify to that. I think that's improper.

"THE COURT: Well, it's not timely. Some time has gone by, and in addition, I'll deny it on its merits.

"[PROSECUTOR]: I would also ask for any curative instructions the court may give.

"THE COURT: I'll do that. Anything else?

"[DEFENDANT]: No, except that I want to make sure that I get this alibi train on the record that you have denied it—"

Defendant did not object to the prosecutor's suggestion to give a curative instruction. When the jurors returned to the courtroom, the trial judge instructed them:

"While you were out, [defendant] made a motion for mistrial on the basis of a comment made by the District Attorney, and the comment was '[defendant], you can testify if you want to about that.' Well, I want to tell you that the defendant has an absolute constitutional right not to testify. He doesn't have the burden of proof on any issue in the case. That comment was improper, and you are to disregard it. [Defendant] has no responsibility to testify and he has absolutely no obligation to come forward with any evidence, and he doesn't have the burden on any issue in this case. The burden on all issues in the case is on the State."

Defendant did not except to anything in that curative instruction.

■■ The state argues that defendant's motion for a mistrial was untimely. This court has stated that a motion for a mistrial must be made immediately after the objectionable statement or conduct occurs. *See, e.g., State v. Walton,* 311 Or

223, 248, 809 P2d 81 (1991) ("To preserve error, a motion for a mistrial must be timely. It is timely if it is made when the allegedly objectionable statements were made." (citations omitted)); *State v. Shafer*, 222 Or 230, 235, 351 P2d 941 (1960) ("The time to move for a mistrial is when the allegedly prejudicial act occurs, not after the incident has been allowed to pass by, for then it is too late for the trial judge to caution the jury and mend the harm.").

In this instance, defendant moved for a mistrial *immediately* after he finished discussing with the judge the hearsay rulings and after he conferred with his legal advisers. The discussion that took place after the prosecutor's disputed comment, but before defendant's motion for a mistrial, encompassed less than two pages of the trial transcript. In the period of time between the prosecutor's comment and defendant's motion, there was no significant lapse of time, no additional testimony, no recess, and no discussion of another issue. A motion for mistrial made in those circumstances is timely.

■ We now must determine whether the trial court committed an error when it denied defendant's motion for a mistrial.

> " 'A motion for mistrial is "addressed to the sound discretion of the trial judge," who is in the best position to assess and to rectify the potential prejudice to the defendant.' *State v. Farrar*, 309 Or 132, 164, 786 P2d 161 (quoting *State v. Jones*, 242 Or 427, 433, 410 P2d 219 (1966)[)], *cert den* 498 US 879 (1990)). In determining whether a mistrial should have been declared, this court reviews for abuse of discretion. *State v. Smith*, 310 Or 1, 24, 791 P2d 836 (1990)." *State v. Pratt*, 316 Or 561, 574, 853 P2d 827, *cert den* 510 US 969 (1993).

We therefore review the trial court's ruling for an abuse of discretion. *Ibid.*

■ As noted, the Oregon Constitution grants a criminal defendant the right to remain silent. In *State v. Wederski*, 230 Or 57, 62, 368 P2d 393 (1962), this court held that the Oregon Constitution does not permit a prosecutor to draw the jury's attention to a defendant's exercise of the right to remain silent. The United States Supreme Court also has

held that the federal constitution prohibits a prosecutor from pointing out that a defendant has exercised his or her right to remain silent. *See Griffin v. California*, 380 US 609, 615, 85 S Ct 1229, 14 L Ed 2d 106 (1965) (so holding). A defendant's right to remain silent is meaningless if the state may refer to the defendant's silence with impunity. *Wederski*, 230 Or at 62. Applying the foregoing principles, we conclude that the prosecutor's comment on defendant's failure to testify was improper.

It follows that, had the trial court chosen to grant defendant's motion for mistrial, that choice would have been a permissible one. Defendant argues for a more stringent proposition, however: that the trial court had *no other choice* but to grant the motion. In the circumstances of this case, we do not agree that the trial court had lost all discretionary choice on this issue.

This court has stated the following standard of review with respect to a trial court's failure to grant a mistrial when a prosecutor introduces evidence about, or comments on, a criminal defendant's invocation of the right to remain silent:

> "There is no doubt that it is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury. If, however, there was no likelihood of prejudic[i]al inferences in this case, the evidence would be relevant and admissible * * *. The prosecution did not argue to the jury that any particular inference should have been drawn, and the trial court specifically cautioned the jury not to draw any inference as to defendant's guilt or innocence. Nonetheless, it is our duty to inquire whether it was likely that the jury would draw an inference prejudicial to defendant." *State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600, *cert den* 434 US 849 (1977).

After a full consideration of the record in that case, including the context in which the evidence was adduced, the court concluded that the chance that the jury might have drawn an adverse inference was "minimal." *Id.* at 508. The court held

that the trial court had not erred in denying the motion for mistrial. *Id.* at 509.

This court also has held that a trial judge is in the best position to assess the impact on the jury of a prosecutor's improper comment concerning a defendant's right to remain silent. *State v. Farrar*, 309 Or 132, 167, 786 P2d 161 (1990). In *Farrar*, the prosecutor argued to the jury, at the end of the guilt phase of the trial for aggravated murder, that the defendant had failed to talk to the police despite opportunities to have done so. *Id.* at 165. The defendant moved for a mistrial. *Id.* at 165-66. The trial court denied the motion. *Id.* at 166. After citing the standard of review announced in *Smallwood*, this court held that the trial court's ruling was not error. *Id.* at 167. In so holding, this court noted that the "focus of the prosecutor's argument, both immediately before and after the objectionable comments, was to attack [a defense alibi witness'] credibility," that the comment appeared to have been inadvertent, and that in context the comment was not likely to have prejudiced the defendant. *Ibid.*

By contrast, in *State v. White*, 303 Or 333, 341, 736 P2d 552 (1987), the prosecutor "deliberately chose to offend the rules." The prosecutorial misconduct in *White* also was directed specifically to the jury's attention. The prosecutor told the jury at the beginning of the trial that the defendant had been called to testify in an earlier trial but had refused to do so. *Id.* at 336. In those circumstances, the court held that a mistrial was required. *Id.* at 343-44. *See also Wederski*, 230 Or at 60, 62 (new trial ordered when prosecutor argued directly to the jury that the defendant's failure to contradict evidence in the case was significant; for example, the prosecutor reminded the jury, "You recall there was no denial by [the defendant].").

This case is closer to *Farrar* and *Smallwood* than to *White* or *Wederski*. After a full consideration of the record, we conclude that the context of the prosector's improper comment was not one in which inferences prejudicial to defendant were likely to have been drawn by the jury. The prosecutor made only a single reference to defendant's ability to testify. Although the jury was present, the comment was directed to the judge, not to the jury. The prosecutor made

that comment apparently in frustration, in the context of objecting to defendant's repeated attempts to introduce inadmissible hearsay. Under those circumstances, the trial court was faced with a question that it could decide either way.[2]

In conclusion, we hold that the trial court did not err when it denied defendant's motion for a mistrial.

## MOTION TO EXCLUDE WITNESSES

Defendant's second assignment of error involves the trial court's denial of his motion to exclude witnesses from the courtroom. Defendant made that motion after direct examination of the second witness during the state's case-in-chief. At that time, the following exchange occurred:

"[DEFENDANT]:   * * * Actually, that's another thing I forgot. Should I make a motion to exclude the witnesses out of the courtroom?

"THE COURT:   You could have, but you haven't.

"[DEFENDANT]:   Okay, can I make that motion now?

"[PROSECUTOR]:   I'd object, Your Honor. *It's too late. Those are supposed to be made before trial starts.*

"[DEFENDANT]:   There has only been two witnesses.

"* * * * *

"THE COURT:   *It's true, it is late. It's not timely. Very well, we'll follow the rules. It's not timely. It has to be made at that point, and it's too late.*" (Emphasis added.)

Defendant argues that the trial court's denial of his motion to exclude witnesses was an error that rendered the trial "fundamentally unfair." By contrast, the state makes two arguments as to why the trial court did not err: because it was within the trial court's discretion to deny the motion as untimely and because defendant suffered no demonstrable prejudice from the denial. We agree with the state's latter argument.

---

[2] As noted in the text, above, the trial court gave a curative instruction to the jury immediately after hearing defendant's motion for mistrial. Defendant did not object to the prosecutor's request for an instruction and did not object to the form or sufficiency of the instruction given. The trial court's decision to give that instruction does not, however, play a role in our holding here.

Rule 615 of the Oregon Evidence Code (OEC) governs exclusion of witnesses. It provides, in part:

> "At the request of a party the court *may* order witnesses excluded until the time of final argument, and it may make the order of its own motion." (Emphasis added.)

The purpose of an exclusion order " 'is to prevent any possibility that the testimony of one witness may be influenced or tainted by what he learned from hearing the testimony of another.' " *State v. Cooper*, 319 Or 162, 165 n 2, 874 P2d 822 (1994) (quoting *State v. Burdge*, 295 Or 1, 9, 664 P2d 1076 (1983)). In addition, an exclusion order helps to prevent witnesses from learning in advance the types of questions that the opposing lawyer is likely to ask on cross-examination. Laird C. Kirkpatrick, *Oregon Evidence* 395 (3d ed 1996).

■ The use of the word "may" in OEC 615 suggests that the trial judge has discretion whether to exclude witnesses. *Compare* Federal Rule of Evidence 615 (providing that witnesses *shall* be excluded at the request of a party). *See Burdge*, 295 Or at 9 (pointing out difference between federal and state rules); Kirkpatrick, *Oregon Evidence*, at 395 (same). Because the decision whether to grant a motion to exclude witnesses is discretionary, we generally review such a decision for an abuse of discretion. *Cf. State v. Kendrick*, 239 Or 512, 518, 398 P2d 471 (1965) (when the trial court denies a motion for a mistrial following a witness' violation of an exclusion order, the allowance or denial of the motion is reviewed for an abuse of discretion).

■ But in the present case, the trial court did not exercise the discretion that the rule grants. The state's only objection to defendant's motion to exclude witnesses under OEC 615 was that it was made too late. The prosecutor asserted that a motion to exclude witnesses is "supposed to be made before trial starts." The trial court agreed with that assertion when denying defendant's motion and stating, "It's true * * *. [W]e'll follow the rules. * * * It has to be made at that point, and it's too late." By so ruling, the trial court acted on what it believed was a legal requirement, rather than a matter on which it had the authority to rule either way. In declining to exercise its discretionary authority, the trial court committed a legal error.

██ OEC 615 does not contain a temporal requirement. That is, that rule does not *require* that a motion to exclude witnesses be made before trial or at any other specific time. Therefore, the fact that defendant did not move for exclusion of witnesses under OEC 615 until after the direct examination of the state's second witness did not, by itself, provide a basis for denying the motion.

██ We do not mean to suggest that the timing of a motion to exclude witnesses under OEC 615 is irrelevant. In deciding whether to grant such a motion, a court may consider any fact that bears on the purposes of an exclusion order. A delay in making the motion, for example, may lessen the utility of exclusion, because the remaining witnesses already may have heard parts of other witnesses' testimony. That weighing process is not what occurred here, however. In the circumstances, the trial court erred in failing to consider defendant's motion to exclude witnesses under the proper discretionary standard.

██ Because the trial court erred, we next consider whether that error requires reversal. As this court stated in *State v. Busby*, 315 Or 292, 299, 844 P2d 897 (1993):

> "Even if error occurs during trial, this court will not reverse a conviction if the error is harmless. In *State v. Walton*, 311 Or 223, 230, 809 P2d 81 (1991), this court reiterated the rule for testing harmless error under the Oregon Constitution, found in *State v. Isom*, 306 Or 587, 595-96, 761 P2d 524 (1988), as follows:
>
> > " 'Under Oregon law, a verdict against a criminal defendant may be affirmed notwithstanding trial error if the error did not affect a "substantial right" of the defendant. OEC 103(1).[3] This court has interpreted this to mean that the verdict may be affirmed if there is "little likelihood that the error affected the verdict." *State v.*

---

[3] OEC 103(1) provides, in part, that "[e]vidential error is not presumed to be prejudicial." OEC 101(4) lists situations in which OEC 103(1), among other sections of the Oregon Evidence Code, does not apply. A ruling under OEC 615 is not among those situations.

Additionally, the principle of harmless error would be the same even if OEC 103(1) did not apply. ORS 138.230 provides, in part, that an appellate court should not disturb a trial court's judgment in a criminal case because of discretionary decisions or defects that "do not affect the substantial rights of the parties."

*Hansen*, 304 Or 169, 180-81, 743 P2d 157 (1987); *see also State v. Miller*, 300 Or 203, 220-22, 709 P2d 225 (1985)[, *cert den* 475 US 1141 (1986)].' "

This record contains no showing that defendant was prejudiced, either by the trial court's failure to exercise discretion or by the ruling that the court made. The record does not contain any indication that we can find (and defendant does not suggest) that any witness tailored testimony to conform with that of any earlier witness or even communicated with any earlier witness about questions by trial counsel, about trial testimony, or about the facts of the case. Indeed, because of the nature of the proof, even the *possibility* of such tailoring was very remote. The state's case was based almost entirely on circumstantial evidence. More than 40 witnesses testified for the state. Each of those witnesses testified about a *different occurrence or event* and, thus, provided a different link in the state's theory of the case. For the most part, their testimony was not cumulative *or corroborative*.

We conclude that defendant has failed to demonstrate that the trial court's error, described above, prejudiced him. Accordingly, that error does not require reversal.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed.

**FADELEY, J.,** specially concurring.

I disagree with the conclusion that the prosecutor's remark was not likely to have an effect on the jury. 325 Or at 24. I think that the prosecutor's remark that defendant "can always get up and testify himself if he wants to" came in a context making it likely that the jury would draw inferences prejudicial to defendant. The content of the remark is designed to have that effect in this case, because the jury knows that defendant has given notice of an alibi defense under ORS 135.455 and defendant's failure to offer proof of that alibi is the issue to which the prosecutor's remark was directed.

This court's past case law indicates that such comments are "usually" reversible error where, as here, the jury is likely to draw adverse inferences from such comments. *State v. White*, 303 Or 333, 340-4 , 736 P2d 552 (1987); *State*

*v. Wederski*, 230 Or 57, 368 P2d 393 (1962); *see also State v. Jones*, 279 Or 55, 566 P2d 867 (1977) (curative instruction insufficient, where prosecutor commented in the presence of jury that the defendant had committed several other crimes); *compare State v. Farrar*, 309 Or 132, 167, 786 P2d 161 (1990) (where this court interpreted a prosecutor's reference as a "slip of the tongue" intended to refer to the silence of a defense witness, Oliver, rather than the defendant, and where the defendant did not request *or receive* a curative instruction) *with Jones*.

I do not read the comments of the state's attorney in the context in which they were made as a permissible response to the statements made by the trial court, also in the presence of the jury. The trial court had just explained to defendant that no exception to the hearsay rule was available, and that testimony on the point at issue, alibi, was required to be presented by live witnesses with those witnesses present in court and subject to cross-examination. The state's attorney immediately thereafter *interjected* his comment that defendant could be one such witness. That interjection immediately followed the trial court's sustaining the prosecutor's hearsay objection and instructing defendant to produce his evidence with live witnesses. The comment capitalized on what the court had just said and can be understood as stating an example of how defendant could carry out the trial court's instruction to produce proof of alibi by live witnesses. However, the interjection was neither called for nor justified as a response to anything that the court or defendant had just said. Instead, it was reinforced by, and allied itself with, what the court had just said, adding a spin that violates a constitutional guarantee. The spontaneous interjection was not an appropriate substitute for an objection based on hearsay. It cannot be explained away on that basis. Nor do I agree with the majority that "frustration," 325 Or at 24-25, even if present, permits or excuses such an interjection on behalf of the state in this context.

However, I concur in the result, because defendant did not object to the form or content of the remedy selected by the trial court in an apparent effort to neutralize the state's prejudicial comment. A curative instruction on the subject of a constitutional right is not necessarily proper where it again

calls to the attention of a jury the fact that a defendant has exercised her or his constitutional right not to testify. But here defendant acquiesced in the instruction being given, and did so within the context in which it was given, rather than the context suggested in *Wederski*, 230 Or at 60. I cannot say that defendant's decision to not object to the instruction was divorced from a trial strategy choice to "speculate on the verdict," a strategy mentioned adversely in *White*, 303 Or at 342. *See also State v. Smallwood*, 277 Or 503, 561 P2d 600 (1977) (fact that the defendant later submitted to a full psychiatric examination vitiated prejudicial effect of comment that he initially refused such an examination on grounds of the right against self-incrimination and the right to have counsel present).

I do not agree with the assessment above in the opinion that precedes this concurrence, 325 Or at 25 n 2, that the curative instruction plays no "role" in proper disposition of this case. I think that the repetition of the prejudicial point that a defendant is not testifying—a point that is re-emphasized by a "curative" instruction such as that given here—does play a part in the decision whether to reverse. The instruction, in effect, repeated to the jury what the prosecutor had just pointed out, that defendant was not going to testify. But, apparently as a strategic choice, the instruction was not objected to by defendant in any respect. Instead, he acquiesced in it. Under those simple circumstances, affirming a conviction that follows on such a choice is not reversible error.