LINDER, J.,
concurring in part and dissenting in part.
I agree with the majority’s essential legal analysis in these cases, which recognizes that a trial judge’s decision whether to consent to a jury waiver in a criminal case may be based on an array of considerations, including the interests of the state, as articulated by the prosecutor. I further agree that the trial judge may not simply defer to the position of the prosecutor in a way that delegates the decision whether
*267 to consent to the prosecutor, rather than base the decision on the trial judge’s independent and informed judgment. Consequently, I agree with the majority that State v. Wilson 240 Or App 708, 247 P3d 1262 (2011), must be reversed, because the record does not reflect that the trial judge exercised independent discretion in that case. In State v. Harrell, 241 Or App 139, 250 P3d 1 (2011), however, I believe that this court should affirm the judgment. I write separately to explain my agreement with the majority’s essential legal analysis and disposition in Wilson, and my disagreement with the disposition in Harrell.
I. HISTORICAL BACKGROUND
I begin by examining in some additional depth the circumstances that led to the 1932 amendment to Article I, section 11, of the Oregon Constitution because they aid in illuminating the role of a trial judge’s consent to waiver of a jury in a criminal trial.
Criminal bench trials were unheard of at English common law. Instead, trial by jury was “the one regular common-law mode of trial,” and defendants had no right or means to choose trial by a judge in place of a jury. Singer v. United States, 380 US 24, 26-29, 85 S Ct 783, 12 L Ed 2d 630 (1965) (discussing common-law jury trial right). Although there apparently were occasional criminal bench trials early on in a few American colonies, the practice was never widespread; by the time the United States Constitution was adopted, complete with the Sixth Amendment guarantee of a jury trial in criminal cases, bench trials were not perceived to be an option in criminal prosecutions. Id. at 28-31. Thus, early federal cases, including dicta by the United States Supreme Court, expressed the view that trial by jury was the only constitutionally permissible method of trial in criminal cases. Id. at 31-32 (citing cases). And most jurisdictions presented with the issue had held that a defendant in a criminal case, although able to waive trial entirely by pleading guilty, could not waive a jury and be tried instead by a trial court judge. Wayne R. LaFave, 6 Criminal Procedure § 22.1(h), 31 (3d ed 2007); see generally *268 Erwin N. Griswold, Waiver of Jury Trial in Criminal Cases, 20 Va L Rev 655, 655-56 (1934) (similar observation).[1]
By the mid- to late 1920s and early 1930s, various legal commissions, counsels, and commentators throughout the United States began endorsing “an optional trial without jury in all cases except capital” to deal with large criminal case backlogs and the concomitant delay in resolving criminal prosecutions. See generally S. Chesterfield Oppenheim, Waiver of Trial By Jury in Criminal Cases, 25 Mich L Rev 695, 695, 696 n 1 (1927) (urging legal reform and citing other legal authorities, committees, and councils similarly urging adoption of a bench trial option in noncapital criminal cases). Whether such an option should be at the unilateral election of a defendant, or subject to the consent of the prosecuting attorney, or the trial judge, or both, was open to policy debate, but the “economy of time” achieved with any reform that made criminal bench trials possible was considered “self-evident.” Id. at 736-37 (discussing policy choices involved in various models for waiving jury and having bench trials in criminal cases).
In Oregon, the same discussions were taking place during that time period. In particular, in 1929, the Oregon Judicial Council issued an annual report proposing, among other legal reforms, that the legislature at its next regular session refer to the voters a constitutional amendment that would authorize bench trials in all criminal cases, except those involving death or life imprisonment as a penalty. Report of Oregon Judicial Council for the Year 1929, 9 Or L Rev 332 (1930). In support of that proposal, the council quoted from a report prepared in another state, urging that *269 the reform would save time and money and expedite the administration of criminal justice. Id. at 341-42. The specific proposal recommended by the Oregon Judicial Council was that the defendant, “if he shall so elect, * * * be tried by the court without the intervention of the jury[.]” Id. at 340. The election would have been unilateral; the Council’s proposal did not condition the defendant’s ability to waive jury and be tried by the trial judge on the consent or other agreement of either the prosecutor or the trial judge. As noted below, however, the 1929 proposal never went before the voters.
Shortly after the Council’s report, the United States Supreme Court decided Patton v. United States, 281 US 276, 50 S Ct 253, 74 L Ed 854 (1930). The issue there was whether the defendant and the government, after one juror had to be released due to illness, could jointly agree to proceed before an 11- rather than a 12-person jury. The Court rejected the defendant’s argument that, despite his agreement to proceed with only 11 jurors, he was entitled to a reversal of his conviction because the lack of a 12-person jury was a jurisdictional defect. Id. at 298. The Court further held that it was within a defendant’s power to waive the mode of trial — that is, a 12-person jury as guaranteed by the Constitution — although a defendant had no absolute right to do so. The Court explained:
“Trial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses. In such cases the value and appropriateness of jury trial have been established by long experience, and are not now to be denied. Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution *270 increasing in degree as the offenses dealt with increase in gravity.”
Id. at 312-13. Patton’s pronouncement that waiver of the mode of trial was possible, at least with the concurrence of the government and the trial court, led to widespread acceptance of bench trials as a constitutionally permissible option in criminal cases, thus paving the way for the legal reform being urged across the nation. See LaFave, 6 Criminal Procedure § 22.1(h) at 31 (.Patton led shift to acceptance of proposition that defendant in criminal case constitutionally could waive jury and be tried by judge); Griswold, 20 Va L Rev at 655-56 (observing that, until Patton, it was “far from clear” that a defendant in a criminal case could effectively waive jury and be tried by a judge).[2]
One year after Patton was decided, the Oregon legislature referred to the voters a proposed constitutional amendment authorizing bench trials in criminal cases. The measure, however, differed in substance in two ways from what the Oregon Judicial Council had proposed in its 1929 report. First, it excluded only capital cases, and not cases in which the penalty could potentially include life imprisonment. Ballot Measure 302 & 303 (1932). Second, and significantly for the analysis here, the measure expressly conditioned a defendant’s ability to waive jury and consent to trial by the judge on the trial judge’s consent as well. Id.
The lone argument in the Voters’ Pamphlet addressing the amendment was drafted by a group of legislators who supported its passage. Official Voters’ Pamphlet, General Election, Nov 8, 1932, 6. The argument explained that the Oregon Constitution made a jury trial compulsory in all criminal cases, but that “ [t]here are many cases that may be tried by judge, and without jury, speedily, economically and fully protecting the right of the accused.” Id. The argument repeatedly emphasized that trial by a judge rather than a jury required the consent of the trial judge in addition to that of the defendant. Id. The amendment iden *271 titled, no restrictions on the trial judge’s power to give or refuse consent, except to imply that a judge should withhold consent (but was not required to do so) if the district attorney did not agree that the case should be tried by the judge. Id. (“Although not expressly required by the wording of the amendment, it is nevertheless thought the consent of the district attorney should be obtained as well as that of the judge before whom the case may be tried.”).[3] Voters were reassured that, because a trial judge should consider the prosecutor’s position in deciding whether to consent to a bench trial, the “requirement that consent of accused and judge must both be obtained * * * assure its carefully considered and reasonable use” and that the provision “fully preserved” both the “[flights of state and accused[.]” Id.
That history reveals four points of importance. First, when the Oregon Constitution was amended to authorize bench trials in noncapital criminal cases, the idea was a novel one. Judges were not accustomed to serving as the trier of fact in criminal cases. Citizens, likewise, were not accustomed to having a defendant’s guilt or innocence decided by a single judge, rather than by a jury comprised of representative members of the community. Second, the constitutionality of permitting a defendant unilaterally to dispense with a jury was uncertain. The Supreme Court in Patton had at least suggested that any waiver of the mode of trial, as opposed to a waiver of a trial altogether, was constitutionally permissible only if the waiver was subject to the watchful and considered oversight of a trial judge.[4] Third, shortly *272 after Patton was decided, the Oregon legislature declined to refer to voters a measure giving a criminal defendant the unilateral ability to consent to trial by a judge instead of a jury, and instead expressly conditioned that election on the consent of the trial judge. Fourth, and finally, the argument in favor of the amendment emphasized to voters the importance of independent judicial consent in the waiver decision and that such consent should consider the interests of both the defendant and the prosecution.
With that historical background as context, I turn to the actual text of the 1932 amendment that the voters added to Article I, section 11, and to the majority’s analysis of a trial judge’s authority to give or withhold consent to a jury waiver in a criminal case.
II. THE 1932 AMENDMENT
The original text of Article I, section 11, declared that an accused in a criminal prosecution “shall have the right to public trial by an impartial jury,” but provided no alternative for trial by a judge. The 1932 amendment approved by the voters added the following text to that guarantee:
“provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing.”
Or Const, Art I, § 11. As this court has observed, the amendment operates as a proviso[5] — that is, a clause that introduces a condition or qualification to the jury trial right *273 that Article I, section 11, otherwise guarantees.[6] The terms of that proviso and their collective meaning are straightforward: If the defendant and the trial judge mutually consent to have the trial judge alone try the case, the case may be so tried.
The essential analysis announced by the majority in this case accords with the voters’ intent in adopting the amendment. As the majority recognizes, the provision authorizing a criminal defendant to waive the mode of trial resides among several rights “reserved to criminal defendants” in criminal cases by Article I, section 11, such as the right to compulsory process, the right of confrontation, and the guarantee of trial in the county in which an offense is committed. 353 Or at 262-63.[7] But the majority likewise recognizes that a criminal defendant’s right or ability to elect to be tried by a judge instead of a jury is different in kind from any other guarantee in Article I, section 11 — it is expressly made subject to the trial judge’s consent. Id. at 255-56.[8] The majority properly gives effect to that significant difference by acknowledging that the trial judge’s consent is essential to a legally effective jury waiver in a criminal case. See id. (criminal defendant cannot waive jury without both written waiver and trial judge’s consent to waiver); see generally State v. Barber, 343 Or 525, 529-30, 173 P3d 827 (2007) (Article I, section 11, guarantees adherence to a specified *274 method of waiving jury, which consists of written waiver together with trial judge consent).
As a textual matter, the trial judge’s authority to grant or withhold consent is not limited by any terms expressly set forth in the 1932 amendment. See id. at 256 (also noting textual silence). I agree with the majority, however, that the trial judge’s authority in that regard is not unbounded. Like any exercise of judicial discretion, the trial judge’s decision to consent or not must reflect a reasoned exercise of judgment and be guided by the overall purposes to be served by the decision to be made. I agree with the majority, then, that among the appropriate factors for a trial judge to consider are the extent to which the waiver will ensure a speedy and economic resolution of a case and will fully protect a defendant’s rights. Id. at 260. But as the majority also recognizes, the equation is not one-sided. See id. at 260-61 (acknowledging that trial judge should consider prosecutor’s position). In being urged to vote for the 1932 amendment, voters were specifically told that conditioning the jury waiver on the trial judge’s consent would ensure that the state’s interests, as well as those of the defendant, would be equally considered by the trial judge. Official Voters’ Pamphlet at 6; see also State v. Baker, 328 Or 355, 364, 976 P2d 1132 (1999) (trial judge, in deciding whether to consent to jury waiver, should “consider and give due weight to the preferences of the district attorney.”). Consequently, a trial judge appropriately should consult and consider the position of the prosecutor as well as that of the defendant. And finally, I agree with the majority that this court should not now attempt to anticipate all circumstances that might inform a trial judge’s decision whether to consent to a jury waiver. 353 Or at 261 (“[I]t is difficult to anticipate the variety of circumstances that might prompt a prosecutor to express a preference for or against a defendant’s jury waiver in an individual case.”). It is enough, for present purposes, to sketch the appropriate factors that may inform the consent decision in broad strokes, leaving it to future cases with developed records to explore the legitimacy of considerations not presented in these cases.[9]
*275 III. DISPOSITION OF THESE CASES
A. State v. Wilson
As I have described, I agree with the majority that we should reverse the judgment in State v. Wilson and remand for further proceedings. The excerpts of the record set out in the majority opinion reveal that the prosecutor in Wilson objected to defendant’s request to waive a jury, arguing that the mental state at issue — extreme indifference to the value of human life — was a community standard better resolved by a jury than a judge. 353 Or at 251. The record does not show, however, that the trial judge relied on the prosecutor’s reasons for objecting to a jury trial or that the trial judge otherwise independently assessed what weight to give to the prosecutor’s stated concern. Instead, the trial judge made it clear that he generally requires the mutual consent of the prosecutor and the defendant to proceed with a bench trial, and here, because the prosecutor objected, that was “the end of the matter.” In denying the request on that ground, the trial judge abused his discretion by failing to make his own independent and informed decision. Instead, the trial judge effectively delegated his consent to the prosecutor, which he may not do. See Baker, 328 Or at 364 (legislature may not by statute require prosecutor’s consent to bench trials as a condition of granting them, because the constitution “grants to only one person,” the trial judge, the discretionary choice to deny a criminal defendant in a non-capital case the right to waive trial by jury); State v. Larson, 325 Or 15, 26, 933 P2d 958 (1997) (legal error for trial court to decline to exercise discretion when it has obligation to make discretionary decision). For that reason, I agree that the appropriate disposition in Wilson is to reverse the judgment and remand to the circuit court for further proceedings.
*276 B. State v. Harrell
Harrell presents both a different and a closer question. In Harrell, defendant, at the outset of the case, invoked his right to trial by jury, rather than waive it and be tried by a judge. A jury was selected, and a four-day trial followed. While the jury was deliberating, defendant advised the court that he wanted to waive jury and consent to trial by the judge. Defendant explained that he was doing so at that stage of the proceedings because he believed, based on a question tendered to the court by the jury, that the jury was “hopelessly confused.” The prosecutor objected, urging that the jury’s question may have been inarticulate, but that it was understandable in the context of the factual evidence and did not show that the jury was confused. The prosecutor also relied on the trial judge’s acknowledgment, in an off-record conference with counsel, that in the judge’s experience, judges often do not listen to the evidence with the same focus when presiding as a judge rather than sitting as a factfinder, which had concerned the judge in this case, given the late timing of defendant’s motion.
The trial judge denied defendant’s request for a bench trial. In doing so, the trial judge made clear that he believed he had no discretion to exercise because of the timing of defendant’s motion:
“at this stage in the process I don’t think I even have the discretion — I have the discretion to do it if both sides agree. I — -and I said to you I would be willing to, but I don’t think I have the discretion to dismiss the jury at this stage.
“So that’s my reasoning. As I said to you I would be willing to make the decision, but I don’t think that the law permits me to do so. So the Motion to Dismiss the Jury and Waive Jury Trial at this stage is denied.”
In effect, the trial judge believed that, if the parties were to mutually agree to discharge the jury and proceed before the judge only, the judge could, through his usual authority to oversee the proceedings, do as the parties mutually agreed. But without that agreement, some source of law had to give defendant the ability to waive jury despite the prosecutor’s *277 objection. The trial judge did not believe that Article I, section 11, gave defendant such a right at that late stage of the proceeding. Therefore, because the prosecutor was unwilling to agree to dispense with the jury at that stage of the proceeding, the trial judge concluded that he had no power to grant defendant’s motion.
If that were the extent of the record in Harrell, I would agree that this case should be remanded to the trial court. The constitution does not expressly dictate the timing of the defendant’s jury waiver by requiring the waiver to occur at the outset of the trial. The legislature likely could require the waiver to occur at an earlier point. Baker, 328 Or at 358 (“Criminal procedure is a subject over which the legislature generally has plenary authority, subject to constitutional restrictions.”); see generally State v. Mai, 294 Or 269, 274-77, 656 P2d 315 (1982) (legislature generally may establish reasonable procedures to be followed in exercising constitutional rights as long as the procedures do not result in unfairness; witness could be precluded from testifying, in appropriate case, because defendant failed to comply with reciprocal discovery as required by statute). But the legislature has not done so, and the timing of defendant’s election to waive a jury — that is, post-trial but pre-verdict— does not interfere with policies adopted by the legislature in other related and analogous areas. See, e.g., ORS 135.380(2) (defendant may plead guilty, thus waiving jury trial, at arraignment “or any time thereafter”); ORS 135.365 (“at any time before judgment” court has discretion to permit plea of guilty to be withdrawn). Consequently, in my view, the trial judge’s reason for denying the motion in that initial ruling reflected a legal error.
Again, if that were the extent of the record before us, I would agree that the case should be remanded for further proceedings. But that is not the end of the record. As the Court of Appeals discussed, after trial, but before judgment was entered, defendant moved the court to reconsider its decision denying defendant’s waiver of jury trial on the ground that the court did, in fact, have authority to grant that waiver during jury deliberations. Harrell, 241 Or App at 143. The Court of Appeals opinion sets forth extensive *278 verbatim excerpts from the colloquy that followed on the record, which transpired over two separate hearings. The trial judge reiterated the narrow basis of his initial ruling: “I want to say it, again, that * * * I ruled at that time I didn’t believe that the defendant had a constitutional right to waive jury at that stage [.]” Id. at 143. In doing so, he twice expressly clarified what he was not ruling — he was not saying that the prosecutor had a veto power over defendant’s waiver decision. Id. at 143-44.
After that clarification of his initial ruling, the trial judge then went beyond it and made an alternative ruling. He explained that, if he was wrong and could exercise his discretion despite the timing of defendant’s motion, he would decline to allow the motion. As his reasons, the trial judge expressly recited: the lateness of the motion; the fact that, had the judge sat through the trial as the factfinder, he would have had a greater focus on the factual evidence and would have taken more notes; and he had a particular familiarity with a “close witness” for the defense, which he believed could “be perceived as having some influence on my decision if I was the trier of fact ” Id. at 144-45. The trial judge concluded by saying: “[T]o the extent that it is in my discretion to change my mind and reconsider, I’d have to tell you that I have reconsidered, but still, having reconsidered, I *** believe that my decision was the correct one at the time.” Id. at 145 (emphasis omitted).
The majority concludes that it cannot determine the basis of the trial judge’s ruling. 353 Or at 265. In my view, however, the record is clear. The trial judge took care in articulating on the record what effectively was an alternative ruling in response to defendant’s motion to reconsider its initial ruling. That alternative ruling provides a sound basis for the trial judge’s unwillingess to consent to defendant’s requested jury waiver. Defendant’s motion to waive jury came after the four days of trial were concluded, and the jury had retired to deliberate. By coming so late, the waiver, if granted, would have cast the judge into a role that the judge had not prepared throughout the trial to perform; it would have wasted the jurors’ time and efforts through a four-day trial, as well as the public’s resources, in the form *279 of the extra time and effort expended by the prosecutor and the judge and court staff; and it would have risked undermining the integrity of the proceedings and the confidence in the verdict in multiple ways, including the fact that the judge was familiar with a key defense witness.
In Harrell, the trial judge’s reasons for denying defendant’s request to discharge the jury and have the judge decide the case were self-evidently sound, and they comport with the letter as well as the spirit of Article I, section 11. There was no error, and there is no reason to remand the case to the trial court.
For those reasons, I concur in part and dissent in part.
Kistler, J., joins this opinion.

 Oregon followed that common law tradition. A criminal defendant in Oregon traditionally had an absolute right to plead guilty, which effectively waived the constitutional right to a jury trial on the factual basis for the charge. See generally State v. Wagner, 305 Or 115, 130-31, 752 P2d 1136 (1988), vac’d on other grounds sub nom Wagner v. Oregon, 492 US 914, 109 S Ct 3235, 106 L Ed 2d 583 (1989) (discussing criminal defendant’s traditional right in Oregon to waive right to jury trial by pleading guilty); see generally ORS 135.385(2)(a)(A) (“The court shall inform the defendant that by a plea of guilty * * * the defendant waives the right to trial by jury[.]”). What a defendant traditionally could not do was invoke the constitutional right to a trial while simultaneously waiving the guaranteed mode of trial — that is, waive trial by jury and insist on a trial by a judge instead. No reported criminal case in Oregon proceeded to trial without a jury until after the 1932 amendment to Article I, section 11.

 To be sure, at the time, the Sixth Amendment to the United States Constitution had not yet been held to apply to the states, and so Patton announced a principle of federal law only. But because of the similarities and common origins of the federal and state constitutional guarantees of jury trial in criminal cases, Patton influenced thinking at the state level as well.

 As this court has previously recognized, the information before the voters effectively was “a recommendation that, in making its discretionary decision whether to allow a criminal defendant to waive trial by jury, the trial judge should consider and give due weight to the preferences of the district attorney.” State v. Baker, 328 Or 355, 364, 976 P2d 1132 (1999). The voters thus were told only “what the trial judge may do” and not that the trial court’s discretion was limited by the prosecutor’s agreement. Id. at 363-64 (emphasis in original).

 As cases involving bench trials or a jury of fewer than 12 jurors reveal, precision is important in discussing waiver of the right to a “jury trial” or “trial by jury.” When the waiver is a result of a guilty plea, it is a full waiver of the right— there is neither a jury nor a trial. When the waiver occurs through an agreement to proceed with fewer than 12 jurors or with the judge as the finder of fact, the waiver is really a partial one only. In those circumstances, the defendant seeks to exercise the right to a trial, but waive some aspect of the guaranteed mode of trial. The Court in Patton specifically acknowledged that a defendant traditionally *272 had been able to waive the right to jury trial (a full waiver) by pleading guilty to a charge, but implicitly differentiated such a waiver, which was unilateral, from a partial waiver of the mode of trial only (there, a 12-person jury). 281 US at 305-06. Some years later, in Singer, the Court further established that a criminal defendant’s ability to waive his federal constitutional right to a jury trial does not confer on him the positive corollary right to be tried by a trial court judge. 380 US at 34-35. Consequently, the Court held that the federal jury waiver rule enacted in 1946 under Federal Rule of Criminal Procedure 23(a) constitutionally conditioned a defendant’s ability to be tried by a judge in a federal criminal prosecution on both the government’s and the trial court’s consent; under federal law, a defendant has no absolute right to waive the mode of trial, as opposed to waiving trial entirely by pleading guilty. Id. at 36-37.

 Wagner, 305 Or at 129.

 A proviso is “an article or clause (as in a statute, contract, or grant) that introduces a condition, qualification, or limitation and usu[ally] begins with the word provided ***.” Webster’s Third New Inti Dictionary 1827 (unabridged ed 2002) (emphasis in original).

 Of course, as the circumstances leading to the amendment reveal, at the time, there was significant uncertainty whether the constitutional guarantee of a jury in a criminal case allowed defendant to waive jury and proceed before a judge. That presumably is why the change was brought about by constitutional amendment rather than by statute, and why textually the waiver provision was added as a proviso to the guarantee of a criminal jury trial, rather than a standalone right.

 The legislature could have referred to the voters, and the voters might have approved, an amendment giving a criminal defendant the unilateral ability to waive jury and proceed before a judge, as a minority of states have done. See LaFave, 6 Criminal Procedure § 22.1(h) at 38 (describing unilateral waiver as minority approach). Oregon’s provision is instead consistent with the far more prevalent model followed by states and the federal courts. See id. (most jurisdictions condition a defendant’s criminal jury waiver on the consent of the court, the consent of the prosecution, or both).

 As one authority on criminal procedure observes, sensible rationales exist for requiring judicial consent to a jury waiver in a criminal case. They include *275 giving the judge latitude to play the role that she or he believes will best protect the defendant, instilling community confidence in the outcome of the case, obtaining valuable jury input on matters of witness credibility and community standards, ensuring that juries continue to have a role in criminal proceedings, and preventing use of jury waivers to manipulate the trial process in illegitimate ways (such as trying to force severance of charges in circumstances where the state is entitled to join them). LaFave, 6 Criminal Procedure § 22.1(h) at 39 (discussing rationales and citing representative authorities). We need not — and should not — consider other rationales in the abstract, rather than wait to assess their appropriateness in a case in which the trial judge has relied on one or more of those or other considerations.