DeVORE, J.
*598 Defendant appeals a judgment of conviction for possession and delivery of methamphetamine, ORS 475.894 and ORS 475.890(2). He assigns error to the denial of his motion for a mistrial. Defendant argues that his ability to have a fair trial was prejudiced by an officer's testimony that defendant "did not want to waive his rights,"
*235 because the jury likely inferred that he chose not to speak with police because he was guilty. He argues that a curative jury instruction to disregard the testimony failed to cure the error. We agree, reverse, and remand.
The relevant facts are undisputed. Drug enforcement officers were investigating individuals suspected of drug dealing. Seeing a vehicle associated with the suspects, they followed it, saw traffic infractions, and initiated a traffic stop. Defendant sat in the front passenger seat. A detective asked several questions of defendant, and he answered. A drug-sniffing dog alerted officers to the odor of drugs, prompting a vehicle search. Police asked that defendant and his companions get out of the vehicle, and they hand-cuffed defendant and advised him of his rights. The search revealed 221.08 grams of methamphetamine in the rear compartment of the vehicle, as well as drug paraphernalia in various other locations. Defendant was placed under arrest and charged with four felony offenses.
At defendant's trial, the state examined Sergeant Geist, one of the officers who spoke to defendant at the scene of the traffic stop. The problematic testimony occurred in this exchange:
"[PROSECUTOR]: Okay. After you assisted in the search, what did you do?
"[SERGEANT]: I then interviewed the driver.
"[PROSECUTOR]: Did you interview the passenger?
"[SERGEANT]: I did, yes.
"[PROSECUTOR]: Okay. And who did you identify the passenger as?
"[SERGEANT]: [Defendant].
*599 "[PROSECUTOR]: What happened with the interview with [defendant]?
"[SERGEANT]: There really wasn't an interview. I advised him of his constitutional rights. He indicated he wanted to talk to me, but did not want to waive his rights."
Defendant objected, and the trial court immediately took a short recess to meet with counsel. Defendant moved for a mistrial, arguing that he was prejudiced by the comment regarding the exercise of his constitutional right. The state disagreed that the comment warranted a mistrial, emphasizing that it had no intention of using the comment against defendant and noting that the court could address any potential harm with a curative jury instruction. The court denied defendant's motion. The court recognized that "it's very clear if you try to use an individual's exercising of his rights to remain silent against him, that it's a mistrial[,]" but the court found that the testimony "was vague as to whether or not he had invoked." The court gave defendant the option of a curative instruction, and defendant accepted. Defendant asked that the court "simply say an objection's been sustained. His last answer should be disregarded without saying what his answer was." The court reminded the state to "avoid any further inquiry" into defendant's conversation with the police leading up to the invocation of his rights. When the jury returned, the court instructed:
"THE COURT: Okay. Ladies and gentlemen, I've sustained an objection. The jury is instructed to disregard the last question and the last answer that the witness provided, not consider it any way in their deliberations."
The trial continued, and the jury convicted defendant of possession and delivery of methamphetamine.
Defendant appeals, assigning error to the trial court's denial of his motion for a mistrial. He contends that the jury was likely to infer that he exercised his right to remain silent because he was guilty-especially because he stopped speaking with police once they discovered drugs. Defendant claims that the jury instruction was insufficient to cure that prejudice.
*600 The state argues that defendant failed to preserve his assignment of error because he "invited the error" by requesting the curative instruction and failing to object to it. In response, defendant contends that he preserved the issue by moving for a mistrial, notwithstanding his attempt to mitigate the damage of the testimony with a curative instruction, once the court had denied his mistrial motion.
*236 As to the merits, the state contends that the improper testimony did not deny defendant a fair trial, because the jury was unlikely to have inferred much from the testimony. The state argued that the officer's statement was an isolated statement that the state did not exploit and that the statement was unclear about what particular rights defendant had invoked. Finally, the state argues that the curative instruction was an effective remedy.
At the outset, we must determine whether defendant preserved the asserted error. We previously addressed the very question of whether a "defendant's failure to object to the sufficiency of the curative instruction nullified his mistrial motion for the purposes of [an] appeal," concluding that it did not. State v. Veatch , 223 Or. App. 444, 454-55, 196 P.3d 45 (2008). We have held that, "if the court chooses to give a curative instruction rather than declare a mistrial, any error in denying a preserved mistrial motion remains preserved regardless of whether the defendant objected to the sufficiency of the instruction." Id. at 455, 196 P.3d 45. Consistent with that principle, we conclude that defendant's claim of error was preserved.
We turn to the merits of defendant's appeal. We review the denial of a motion for a mistrial for abuse of discretion, reversing only if the defendant was denied a fair trial. Id. (citation omitted). For a trial to be fair, the verdict must be "based on the evidence" rather than "factors external to the proof at trial." State v. Osorno , 264 Or. App. 742, 748, 333 P.3d 1163 (2014) (citation omitted). A prosecutor's or a witness's reference to the defendant having exercised a constitutional right-like the right to remain silent or to obtain counsel-may prejudice the defendant's ability to have a fair trial if it raises the impermissible inference that *601 the defendant did so because he or she was guilty.[1] Veatch , 223 Or. App. at 455-56, 196 P.3d 45. When such prejudicial inferences are likely, "[t]here is no doubt that it is usually reversible error" to admit the testimony. State v. Smallwood , 277 Or. 503, 505-06, 561 P.2d 600, cert. den. , 434 U.S. 849, 98 S.Ct. 160, 54 L.Ed.2d 118 (1977).
Whether a defendant has been prejudiced by a reference to an invocation of his rights depends on the circumstances in which the reference was made and the likelihood that the jury will draw an inference of guilt. Veatch , 223 Or. App. at 456-57, 196 P.3d 45. Where the context makes the inference unlikely, the trial court does not abuse its discretion by denying a motion for a mistrial. Id. at 456, 196 P.3d 45. A reference may not be prejudicial if it is incidental to some other point that diverts the jury's focus, id. , or it is ambiguous and isolated without any elaboration, State v. Beisser , 258 Or. App. 326, 341, 308 P.3d 1121 (2013). However, declaration of a mistrial may be necessary when a discernable reference is made and nothing directs the jury's attention away from the adverse inference that it raises. Veatch , 223 Or. App. at 457, 196 P.3d 45.
The Supreme Court has determined that an adverse inference of guilt is unlikely when the testimony involves an isolated and indirect reference that is merely incidental to some other focal point of discussion. In State v. Larson , 325 Or. 15, 17, 933 P.2d 958 (1997), the defendant questioned a police officer on the stand about statements made by witnesses whom the officer had interviewed. The prosecutor raised multiple objections on hearsay grounds, all of which the trial court sustained. Id. at 17-21, 933 P.2d 958. On one occasion, the prosecutor suggested that the defendant call those witnesses to testify directly. Id. at 19, 933 P.2d 958. At a later time, the prosecutor complained that the defendant was "trying to get in objectionable *237 material by testifying to it himself" through *602 his questioning, and then, exasperated, told the court that the defendant could "always get up and testify himself if he wants to establish [an] alibi." Id. at 20, 933 P.2d 958. The defendant moved for a mistrial based on the improper reference to his decision to not testify, but the trial court denied his motion. Id. at 21, 933 P.2d 958.
On appeal, the Oregon Supreme Court concluded that the context for the prosecutor's improper comment was not one in which the jury would likely infer that the defendant refused to testify because he was guilty. Id. at 24, 933 P.2d 958. The court highlighted that the prosecutor made only a single reference to the defendant's ability to testify, which the prosecutor directed at the judge and not the jury, and it was made "apparently in frustration" in the course of objecting to the defendant's repeated attempts to introduce inadmissible hearsay. Id. at 24-25, 933 P.2d 958. Accordingly, the trial court's decision to deny the defendant's motion for a mistrial was within its discretion. Id. at 25, 933 P.2d 958.
In State v. Farrar , 309 Or. 132, 165-67, 786 P.2d 161, cert. den. , 498 U.S. 879, 111 S.Ct. 212, 112 L.Ed.2d 171 (1990), the court reached a similar result involving a peripheral, indirect reference to the defendant's silence. The state attacked the credibility of an alibi witness in its closing argument by noting that the defendant had never mentioned having an alibi witness beforehand. Id. at 164-65, 786 P.2d 161. The defendant moved for a mistrial, arguing that the state "essentially rubbed the 5th Amendment in the defendant's face in front of the jury." Id. at 165, 786 P.2d 161. The trial court denied the motion. Id. at 166, 786 P.2d 161.
The Supreme Court affirmed, noting that "[t]he focus of the prosecutor's argument, both immediately before and after the objectionable comments, was to attack the witness's credibility[.]" Id. at 167, 786 P.2d 161. When the state alluded to the defendant's silence, it did so to make an entirely separate point altogether. The court concluded that the reference was "not likely to prejudice the defendant's right to a fair trial, given the context in which the statement was made." Id. (internal quotation marks omitted).
A single ambiguous reference may not, without elaboration, necessarily raise an inference of guilt. In Beisser , *603 the investigating officer testified that she had called the defendant on the afternoon of March 9, but he had "refused to meet [her] that day." 258 Or. App. at 333, 308 P.3d 1121. The defendant moved for a mistrial on the ground that the testimony was a "comment on [his] silence." Id. The trial court disagreed with that interpretation and denied the motion. Id. On appeal, we concluded that the context did not demand a mistrial, underscoring the isolated nature of the comment and the fact that neither the officer nor the state elaborated on it. Id. at 341, 308 P.3d 1121. We held that the court acted within its discretion. Id.
Conversely, we have determined that an adverse inference of guilt is likely when the testimony is not merely incidental and when nothing directs the jury's focus away from it. In Veatch , the defendant faced charges for DUII. 223 Or. App. at 446, 196 P.3d 45. At trial, under examination by the state, an officer testified that the defendant had asked "to call his lawyer before making [the] decision" on whether to take a breathalyzer test. Id. at 448, 196 P.3d 45. The defendant then moved for a mistrial, which was denied. On appeal, we determined that the officer's statement "likely gave rise to an adverse inference of guilt." Id. at 460, 196 P.3d 45. We explained that a jury would likely infer that the defendant asked for an attorney because he was concerned about failing the potentially incriminating breathalyzer test and would see the invocation as a "tacit admission of guilt." Id. We observed that the officer's "statement was not incidental to some other point that the jury was more likely to be focusing on" and, therefore, "nothing in the context diverted the jury's attention away from that inference." Id. We determined that the court erred in denying the defendant's motion for a mistrial. Id. at 462, 196 P.3d 45.
Our more recent decision in Osorno is particularly illustrative. In that case, the defendant faced charges for DUII and other offenses arising from a related car accident.
*238 264 Or. App. at 744, 333 P.3d 1163. At trial, during examination of an officer, the state asked, "Did [the defendant] say when she stopped drinking?" Id. at 745, 333 P.3d 1163. The officer answered, "She told me, 'Don't want to say anything incriminating.' " Id . The defendant objected, and a conference in chambers directly followed wherein the defendant moved for a mistrial. Id. The court denied that motion. Id. at 746-47, 333 P.3d 1163. On appeal, we *604 concluded that there was "no doubt" that the officer's statement "gave rise to an adverse inference of defendant's guilt." Id. at 751, 333 P.3d 1163. We determined that, "because intoxication is not a crime, defendant's answer to the question 'when did you stop drinking?' would be incriminating only if defendant was driving at the time of the collision." Id. We noted that, as in Veatch , nothing in the record indicated that the jury's attention was directed away from the adverse inference of guilt based on the invocation. Id . Accordingly, we reversed the trial court's decision. Id. at 753, 333 P.3d 1163.
Based on those precedents, we conclude that the sergeant's testimony here-that defendant "indicated he wanted to talk to [the sergeant] but did not want to waive his rights"-gave rise to an adverse inference of guilt. Defendant's statement suggested that he had information pertinent to the crime but that he could not share it without incriminating himself. The jury would likely infer that he was concerned about divulging something implicating him in the large amount of methamphetamine police had just discovered. The inference is strong given that defendant was cooperative and communicative with police until the point at which they discovered the drugs. In such a circumstance, a jury would likely see defendant's invocation as a "tacit admission of guilt." Veatch , 223 Or. App. at 460, 196 P.3d 45.
The reference was prejudicial because, as in Osorno and in Veatch , nothing directed the jury's attention away from it. The prosecutor's line of questioning focused on defendant's interview with police or, more precisely, the lack of an interview. The prosecutor elicited the testimony by asking questions specifically regarding defendant's interview. The sergeant's answer was directly responsive to those questions; it was not incidental to some other focal point that would otherwise divert the jury's attention. Considering that no interview with defendant had ever occurred, it is not apparent what other answer the prosecutor could have hoped to evoke. The testimony was not a passing reference made by way of voicing an objection to the judge, as in Larsen , or attacking the credibility of some other witness, as in Farrar . Defendant talking to police was front and center stage.
*605 We disagree with the state that the sergeant's testimony was too ambiguous for the jury to recognize that it referred to defendant invoking his right against self-incrimination. The jury would have understood the statement in the context of the surrounding testimony. They knew that the sergeant had advised defendant of his constitutional rights. It is widely known that the constitutional rights of which police must advise suspects during custodial interrogations are those guaranteed under Miranda , which enshrines the right against self-incrimination. See Miranda v. Arizona , 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant's response, "that he wanted to talk " but would not, further indicates that he was exercising his right to abstain from talking, that is, to remain silent. (Emphasis added.) We are confident that the jury would see that as an invocation of the right against self-incrimination.[2]
That said, the risk that the jury may draw an adverse inference of guilt will not always necessitate a mistrial. In some instances, "the prejudicial effect may be cured by an appropriate jury instruction."
*239 Veatch , 223 Or. App. at 458, 196 P.3d 45 (citation omitted). "The dispositive question on this issue" is "whether the purportedly curative instruction was sufficient to unring the bell." State v. White , 303 Or. 333, 342, 736 P.2d 552 (1987).
"Jurors are assumed to have followed their instructions, absent an overwhelming probability that they would be unable to do so," but, "if it is likely that the jury drew an adverse inference, it cannot be assumed that the jury will follow a curative instruction that merely told the jury to disregard the improper statement." Osorno , 264 Or. App. at 749-50, 333 P.3d 1163 (citations, brackets, and internal quotation marks omitted). The court "must do something more than blandly instruct the jury to forget that it has just seen a white bear." White , 303 Or. at 343, 736 P.2d 552 (citing *606 Lakeside v. Oregon , 435 U.S. 333, 345, 98 S. Ct. 1091, 55 L.Ed.2d 319 (1978) (Stevens, J., dissenting) ("Even if jurors try faithfully to obey their instructions, the connection between silence and guilt is often too direct and too natural to be resisted. *** [T]elling them to ignore the defendant's silence is like telling them not to think of a white bear.")). Instructing the jury to consider the testimony "irrelevant" to their deliberations is not enough. Id. at 344, 98 S. Ct. 1091. Rather, the instruction must achieve the difficult-perhaps impossible-task of negating the inference that the defendant invoked his or her rights because of his or her consciousness of guilt. Osorno , 264 Or. App. at 753, 333 P.3d 1163. Practically speaking, and "as our case law makes clear, curative instructions in this particular context are often inadequate." Id. at 752, 333 P.3d 1163.
We have rejected jury instructions similar to those at hand. In Veatch , after the officer referred to the defendant's request to speak with his lawyer before submitting to a breathalyzer test, the trial court instructed the jury that
"a person has a right to call their lawyer and you're not supposed to make any inferences from that, since they have a right to do it.
"And so the State's not even supposed to bring it up. They brought it up. The seven of us are going to totally ignore it, though they couldn't."
223 Or. App. at 449, 196 P.3d 45. On appeal, we determined that the curative instruction was insufficient. Id. at 461, 196 P.3d 45. Although it was "less 'bland' than the one given in White ," and although the court provided it immediately after the challenged statement, it still did "not negate the inference that the person chose to exercise the right because he was conscious of his guilt." Id. at 461, 196 P.3d 45.[3] It failed to "unring the bell." Id.
*607 Similarly, in Osorno , the curative instruction was ineffective. An officer testified that the defendant had refused to say when she had stopped drinking because she did not want to say anything incriminating. Osorno , 264 Or. App. at 745, 333 P.3d 1163. The trial court met with counsel in chambers and then provided the following instruction:
"[THE COURT]: Ladies and gentlemen, I would instruct you to disregard the last statement that was made, that it is not information that you can consider in deciding this case. Okay? So if you wrote anything down, cross it off your notes and you must disregard it."
Id. at 745, 333 P.3d 1163. On appeal, we concluded that the curative instruction failed to address the prejudicial effect of the officer's testimony. Id. at 752, 333 P.3d 1163. We noted that it was "even less tailored to cure the prejudice than the instructions that were considered too 'bland' in both Veatch and White ." Id. , 333 P.3d 1163. The jury "was effectively asked to forget that it had just *240 seen a white bear," and "no part of the instruction negated the inference that defendant made the statement because she was conscious of her guilt." Id . at 752-53, 333 P.3d 1163 (citation, internal quotation marks, and brackets omitted). Again, the curative instruction was insufficient.
For the same reason, we conclude that the curative instruction in this case was insufficient to address the prejudicial effect of the sergeant's testimony. As in Osorno , the trial court made commendable efforts to undo the damage-immediately convening counsel, accepting their input on possible instructions, and then promptly instructing the jury to "disregard the last question and the last answer that the witness provided," and "not consider it any way in their deliberations." As is often the case, however, the harm was done, and the instruction was inadequate to undo it. The instruction was nearly identical to the one we deemed unsatisfactory in Osorno , and it was "less tailored" than that which we considered "too bland" in Veatch . The instruction did nothing to negate the inference that defendant chose to exercise his right to refuse to speak with police out of *608 consciousness of guilt. Id . In short, the trial court erred in denying defendant's motion for a mistrial.
Reversed and remanded.

The federal and state constitutions guarantee criminal suspects the right against compelled self-incrimination. U.S. Const, Amend V ("No person *** shall be compelled in any criminal case to be a witness against himself[.]"); Or. Const., Art. I, § 12 ("No person shall *** be compelled in any criminal prosecution to testify against himself."). Those provisions prohibit the prosecution from drawing the jury's attention to the defendant's exercise of this right. Griffin v. California , 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L.Ed.2d 106, reh'g den. , 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730 (1965) (concluding thus and holding that the standard applies to states through the Fourteenth Amendment to the United States Constitution); State v. Larson , 325 Or. 15, 22, 933 P.2d 958 (1997) (discussing the state constitutional standard).

We find Beisser distinguishable. In that case, the circumstances involved a telephone call requesting that the defendant meet police. The challenged testimony made no direct reference to the defendant's rights. The testimony merely referred to the defendant's willingness to "meet." The mention of a particular day might have meant that timing was the issue more than assertion of his constitutional rights or a consciousness of guilt. Here, in contrast, defendant opted for silence in a more coercive environment of police custody after the discovery of incriminating evidence.

In White , 303 Or. at 337-38, 736 P.2d 552, the trial court instructed:
"Ladies and gentlemen, before we recessed, [the prosecutor] had made some comment in his opening statement about [the defendant] having been called to testify in the [co-defendant's] matter and not having testified, chosen not to do so.
"I have ruled that that matter is not relevant in this case. You will not be hearing any evidence about that, and that there are any number of reasons why that may have occurred would have nothing to do with any that is probative of the evidence in this case. So in no way are you to take that into account or in any way to discuss or consider what [the prosecutor] has said in regard to that. It's not evidence in this case. It's not to be taken by you as any evidence of the case or have any place in this case."