680 February 14, 2024 No. 92

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID LLOYD ASHBAUGH,
*Defendant-Appellant.*

Hood River County Circuit Court
20CR63430; A177314

Karen Ostrye, Judge.

Argued and submitted June 5, 2023.

James Brewer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Reversed and remanded.

## PAGÁN, J.

A jury convicted defendant of the misdemeanor offense of second-degree theft. ORS 164.045. In his second assignment of error, defendant argues that the prosecutor's statements, in rebuttal closing argument, were so prejudicial that it was plain error for the trial court not to address them or declare a mistrial. As explained more fully below, the prosecutor referred to defendant's exercise of his right to remain silent. The jury could have interpreted the prosecutor's remarks in one of two ways, either as referring to defendant's decision not to testify at trial, or as referring to his failure to provide the same explanation for his conduct at the time of the incident. But the prosecutor also suggested that an innocent person would not have remained silent, which undoubtedly implied to the jury that defendant's silence was evidence of his guilt. By doing so, the prosecutor violated defendant's rights under the state and federal constitutions. Relying on *State v. Chitwood*, 370 Or 305, 312, 518 P3d 903 (2022), we conclude that the improper comments qualify as plain error, and we exercise our discretion to correct the error. We therefore reverse and remand defendant's theft conviction.[1]

### FACTS

On November 3, 2020, at a Safeway store in Hood River, a loss prevention officer stopped defendant after he walked out of the store with a full cart of groceries without paying for them. While exiting the store, defendant held up a receipt, but he admitted to the loss prevention officer that it was an old receipt. The store scanned the items in defendant's cart, and they were valued at $374.

Officer Eric Foster was called to the store and, when he arrived, defendant was seated upstairs in an office. Foster read defendant his *Miranda* rights, including defendant's right to remain silent. Defendant acknowledged that he understood those rights. Defendant claimed to have made a mistake, that he was in a hurry, and that, when he walked out of the store with the shopping cart, he was going to his car to get his credit card and wallet.

---

[1] That disposition obviates the need to address defendant's first, third, and fourth assignments of error.

Defendant was charged with one count of second-degree theft. ORS 164.045. At his jury trial, defendant called a family friend, who testified that she and defendant regularly shopped for an elderly neighbor who had COVID-19 concerns. The neighbor required them to use coupons, and she provided them with coupons and old receipts. Although the family friend was not with defendant on November 3, 2020, she testified that defendant had told her that he was going to the store that day to shop for the elderly neighbor.

During the rebuttal portion of the state's case, the prosecutor recalled Foster, and the officer testified that, at the time of the incident, defendant did not mention COVID-19 concerns or that he was taking care of someone. After the officer provided additional testimony about the statements that defendant had made to the officer, the prosecutor asked:

"Q   Did he make any other statements?

"A   Not that I'm aware of.

"Q   Did you find that odd?

"A   Actually, I did. He didn't—when I issued him a citation, he didn't argue it. He didn't seem upset that he was receiving a citation. It did seem kind of odd that, you know, he was receiving a criminal citation and he wasn't—didn't seem concerned about it."

Defendant did not object to that examination of Foster.

In his closing argument, defendant argued that the investigation of his conduct was inadequate and that the state failed to prove beyond a reasonable doubt that defendant intended to commit theft. In rebuttal closing argument, the prosecutor asserted that the family friend's explanation of what occurred was speculation, and argued:

"And yes, [defense counsel] makes a point. [Defendant] didn't say why he was holding the receipt. Why didn't he tell that to the officers then if it's such a big deal? Why didn't he bring up any of these COVID concerns, his neighbor['s] concerns? If that were me—you know how frustrated you would be to be falsely accused of theft? Instead, he sits there, doesn't say anything."

Defendant did not object to that argument. The jury found defendant guilty of second-degree theft.

ANALYSIS

We focus on defendant's second assignment of error, in which he argues that the prosecutor's closing argument was improper and that the trial court erred by failing to *sua sponte* declare a mistrial. Whether a prosecutor improperly comments on a defendant's right to remain silent is a question of law that we review for legal error. *State v. Reineke*, 266 Or App 299, 307, 337 P3d 941 (2014).

A criminal defendant has a right to remain silent under Article I, section 12, of the Oregon Constitution, and under the Fifth and Fourteenth Amendments to the United States Constitution.[2] *Reineke*, 266 Or App at 308. "Although Article I, section 12, confers protections independently of protections set out in the federal constitution, Oregon courts generally consider Article I, section 12, and the Fifth Amendment together when construing the right against self-incrimination, unless a defendant articulates an argument that the two constitutions provide different protections." *State v. Anderson*, 285 Or App 355, 356 n 1, 396 P3d 984, *rev den*, 362 Or 94 (2017) (citing *State v. Scott*, 343 Or 195, 203, 166 P3d 528 (2007)).

In *State v. Wederski*, 230 Or 57, 62, 368 P2d 393 (1962), the Supreme Court reversed and remanded for a new trial because the prosecutor commented upon the defendant's failure to take the stand. The court explained that "Article I, [section] 12 *** guarantees the privilege of the defendant to remain silent. The privilege is meaningless if the state may refer to the defendant's silence with impunity." In *State v. Smallwood,* 277 Or 503, 505-06, 561 P2d 600, *cert den*, 434 US 849 (1977), relying on federal cases, the Supreme Court pointed out that "it is usually reversible

_____

[2] Article I, section 12, provides, in part, that "[n]o person shall be *** compelled in any criminal prosecution to testify against himself." The Fifth Amendment provides, in part, that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." The Fourteenth Amendment provides, in part, that "[n]o State shall *** deprive any person of life, liberty, or property, without due process of law." The Fifth Amendment was made applicable to the states by the Fourteenth Amendment. *Griffin v. California*, 380 US 609, 611, 85 S Ct 1229, 14 L Ed 2d 106 (1965).

error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury."

In *State v. White*, 303 Or 333, 340-42, 736 P2d 552 (1987), the court applied that rule to a prosecutor's comments about the defendant's refusal to testify in another trial. Citing *Griffin v. California*, 380 US 609, 85 S Ct 1229, 14 L Ed 2d 106 (1965), the court explained that "the Constitution of the United States does not permit drawing to the jury's attention a defendant's exercise of the right to remain silent." *White*, 303 Or at 340. The prosecutor's comments had "'a presumably harmful effect.'" *Id.* at 342 (quoting *Wederski*, 230 Or at 60). The court determined that the trial court's curative instruction was insufficient, and it reversed and remanded for a new trial. *Id.* at 342-44.

In *State v. Veatch*, 223 Or App 444, 455-56, 196 P3d 45 (2008), we pointed out that "[a] reference by the prosecutor *** to the fact that the defendant exercised a constitutional right, such as the right to counsel or the right to remain silent, may prejudice the defendant's ability to have a fair trial if the jury is likely to infer that the defendant exercised the right because he or she was guilty of the charged offense." In *Veatch*, we reversed and remanded because an officer's testimony about the defendant invoking his right to counsel likely gave rise to an adverse inference of guilt. *Id.* at 460-62. Similarly, in *State v. Osorno*, 264 Or App 742, 744, 333 P3d 1163 (2014), we reversed and remanded because the prosecutor elicited testimony regarding the defendant's invocation of her right to remain silent.

In *Reineke*, 266 Or App at 308, we considered a prosecutor's use of PowerPoint slides during closing arguments in which the prosecutor pointed out that the defendant had refused to speak to the police. We noted that, under both state and federal law, it is permissible for a prosecutor to draw attention to evidence of a defendant's silence when the defendant opens the door to that evidence. *Id.* at 308-09. For example, a prosecutor is permitted to respond to an argument that a detective's investigation was inadequate by telling the jury that it was the defendant who cut short the

interview by invoking his right to remain silent. *Id.* at 309 (citing *State v. Guritz*, 134 Or App 262, 270, 894 P2d 1235, *rev den*, 321 Or 560 (1995)). However, "even if a defendant opens the door to evidence of the defendant's silence, a prosecutor cannot argue that the defendant is guilty because he or she invoked the right to remain silent." *Reineke*, 266 Or App at 309. We concluded that the PowerPoint slides were improper because they suggested to the jury that the defendant's silence was evidence of his guilt. *Id.* at 309-10. We reversed and remanded for a new trial. *Id.* at 310-11.

Similarly, in *State v. Ragland*, 210 Or App 182, 190, 149 P3d 1254 (2006), we concluded that the trial court erred in overruling defendant's objections to a prosecutor's comments which suggested to the jury that no "reasonable person" would have remained silent while being questioned by the police.

We turn to the present case. Here, during rebuttal closing argument, the prosecutor argued that the explanation for defendant's conduct offered at trial—namely, that defendant was shopping for an elderly neighbor with COVID-19 concerns—is not one that defendant provided at the time of the incident. As the prosecutor put it, "Why didn't he bring up any of these COVID concerns, his neighbor['s] concerns?" And then the prosecutor suggested that an innocent person would not have remained silent: "If that were me – you know how frustrated you would be to be falsely accused of theft? Instead, he sits there, doesn't say anything."

It is not entirely clear what the prosecutor meant by those comments because defendant did not remain silent when questioned by Foster; instead, defendant stated that he made a mistake, that he was in a hurry, and that he was going to his car to get his credit card and wallet. Thus, the prosecutor may have meant that, at the time of the incident, defendant was silent regarding the explanation for his conduct provided at trial, or the prosecutor may have been referring to defendant's failure to testify at trial.

Regardless of which of those two inferences the prosecutor intended for the jury to draw, however, the prosecutor contrasted the defendant's silence with how an innocent

person would have acted. Thus, the prosecutor invited the jury to view defendant's silence as evidence of his guilt. Those remarks violated defendant's rights under Article 1, section 12, because "the Oregon Constitution does not permit a prosecutor to draw the jury's attention to a defendant's exercise of the right to remain silent." *State v. Larson*, 325 Or 15, 22, 933 P2d 958 (1997). Put simply, a prosecutor may not refer to a defendant's silence with impunity and we presume that reference was harmful. *Wederski*, 230 Or at 62; *White*, 303 Or at 342.

By suggesting that defendant's silence was evidence of his guilt, the prosecutor also violated defendant's rights under the federal constitution. In *Griffin*, 380 US at 615, the United State Supreme Court held that "the Fifth Amendment *** forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin* is on point because the prosecutor commented on defendant's silence when he contrasted defendant's conduct with how an innocent person would have acted.

In *Doyle v. Ohio*, 426 US 610, 619, 96 S Ct 2240, 49 L Ed 2d 91 (1976), the Court held that it is a violation of the Fifth and Fourteenth Amendments for a prosecutor to use a defendant's post-*Miranda* silence to impeach a defendant's subsequent explanation provided at trial. However, the Court limited the reach of *Doyle* in *Anderson v. Charles*, 447 US 404, 408, 100 S Ct 2180, 65 L Ed 2d 222 (1980), explaining that *Doyle* does not apply to cross-examination regarding prior inconsistent statements. In *Anderson*, the prosecutor's questions were permissible because they "were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement." *Id.* at 409. Similarly, under Oregon law, a prosecutor may impeach a defendant's explanation provided at trial with prior inconsistent statements made by the defendant. *State v. House*, 282 Or App 371, 378, 385 P3d 1099 (2016); *Ragland*, 210 Or App at 189-90.

Here, defendant did not remain silent after the officer *Mirandized* him. However, the prosecutor did not simply seek to impeach an explanation for defendant's conduct

with prior inconsistent statements; instead, the prosecutor sought to "draw meaning from silence" when the prosecutor stated, "If that were me – you know how frustrated you would be to be falsely accused of theft? Instead, he sits there, doesn't say anything." As already explained, those remarks violated defendant's rights under Article 1, section 12. *See Larson*, 325 Or at 22 ("[T]he Oregon Constitution does not permit a prosecutor to draw the jury's attention to a defendant's exercise of the right to remain silent."). Those comments also violated defendant's rights under the federal constitution. *See Hendrix v. Palmer*, 893 F3d 906, 925 (6th Cir 2018) ("Under *Anderson*, the crucial question is whether the prosecutor's comments at trial were designed to draw meaning from silence, which is constitutionally prohibited, or whether they sought to elicit an explanation for the prior inconsistent statement, which is permissible." (Internal quotation marks omitted.)).

In sum, if the prosecutor was referring to defendant's failure to testify at trial, then the comments violated defendant's rights under the state and federal constitutions. *See*, *e.g.*, *White*, 303 Or at 342 (explaining that state and federal cases teach us that "informing the jury that a defendant has exercised the right to remain silent is likely to prejudice the defendant's right to a fair trial"). Alternatively, if the prosecutor was referring to defendant's failure to provide the same explanation at the time of the incident, then the prosecutor's comments were also impermissible because the prosecutor suggested that defendant's prior silence regarding that explanation was evidence of his guilt. *See Ragland*, 210 Or App at 191 (prosecutor may not invite the jury to draw a prejudicial inference from a defendant's silence); *Reineke*, 266 Or App at 309-10 (same); *Hendrix*, 893 F3d at 925 (under the federal constitution, a prosecutor is prohibited from making comments that are designed to draw meaning from silence). Whichever inference the prosecutor intended for the jury to draw, the comments violated defendant's rights under Article 1, section 12, and under the Fifth and Fourteenth Amendments.

Next, we consider a potential obstacle to our review of the prosecutor's error. Defendant did not object to the

prosecutor's improper remarks during rebuttal closing argu-
ment or request a mistrial. Accordingly, defendant seeks
plain-error review, and he argues that the trial court should
have *sua sponte* intervened or declared a mistrial. The first
step in a plain-error analysis is to determine whether the
claimed error is plain, which involves examining the follow-
ing three factors: (1) whether the claimed error is one of law;
(2) whether the claimed error is obvious and not reasonably
in dispute; and (3) whether the claimed error appears on
the record. *State v. Vanornum*, 354 Or 614, 629, 317 P3d
889 (2013). As part of our plain-error review, when allega-
tions of prosecutorial misconduct are at issue, we consider
whether the prosecutor's statements "were so prejudicial
that an instruction to disregard them would not have been
sufficiently curative to assure the court, in its consideration
of all the circumstances, that the defendant received a fair
trial." *Chitwood*, 370 Or at 312. We conclude that they were.

    In *Chitwood*, the Supreme Court indicated that
the prosecutor's impermissible argument was cognizable
as plain error because it concerned a fundamental require-
ment of our justice system; namely, that the state must prove
every element of the offense beyond a reasonable doubt. *Id.*
at 317. The prosecutor's comments gave "the jury permission
to ignore defendant's fundamental right to proof beyond a
reasonable doubt—a right that is every bit as fundamental
and longstanding as the right to remain silent." *Id.* at 321.

    Similarly, here, the prosecutor's improper comments
concerned a fundamental aspect of our justice system: a defen-
dant's right to remain silent. As we explained in *Osorno,* 264
Or App at 748, "[a] reference by a prosecutor *** to the fact
that a defendant exercised a constitutional right, such as the
right to remain silent, may prejudice the defendant's ability
to have a fair trial if the jury is likely to infer that the defen-
dant exercised the right because he or she was guilty of the
charged offense." (Internal quotation marks omitted.)

    In *Chitwood*, the Supreme Court determined that
"the timing of the prosecutor's remark *** exacerbated the
risk that it would be prejudicial." 370 Or at 317. The prose-
cutor's comment in that case came at the end of the rebuttal
closing argument. *Id.* It was the last thing the jury heard

before beginning deliberations and its impact was likely to have been significant. *Id.* at 317-18. Similarly, here, the prosecutor's comments regarding defendant's silence were also made during the state's closing argument in rebuttal. Like in *Chitwood*, the timing of the remarks exacerbated the risk of prejudice.

As part of our plain-error review, we also address whether a curative instruction would have sufficed to correct the error. *Chitwood*, 370 Or at 319. Here too, that consideration weighs in defendant's favor. In *White*, 303 Or at 336, the prosecutor remarked that the defendant had refused to testify in his codefendant's trial. The court determined that the curative instruction provided was not sufficient because it did no more than tell the jury that defendant's refusal to testify in another trial was irrelevant, which the court compared to instructing the jury "to forget that it has just seen a white bear." *Id.* at 343.

By contrast, in *Larson*, 325 Or at 24, the Supreme Court reached a different conclusion. It determined that a prosecutor's comment about the defendant's failure to testify was improper, but that the jury was not likely to have drawn inferences prejudicial to the defendant. *Id.* The Supreme Court explained that the prosecutor made only a single reference to the defendant's ability to testify, the comment was directed to the judge, not the jury, and the prosecutor made the comment in frustration in the context of objecting to the defendant's repeated attempts to introduce inadmissible hearsay. *Id.* at 24-25. The trial court also provided a curative instruction, which pointed out that the defendant had "'an absolute constitutional right not to testify.'" *Id.* at 21.

The instant case is more like *White* than *Larson*. Here, the prosecutor's remarks were likely to have been especially harmful because, during the prosecutor's examination of Foster, the prosecutor had already elicited testimony from the officer suggesting that it was "odd" that defendant had not made additional statements to the officer.[3] As a result,

---

[3] We offer no opinion as to whether the prosecutor's examination of Foster constituted plain error. Given our conclusion that the prosecutor's remarks during rebuttal closing argument constituted plain error, we need not reach that question, which defendant raises in his first assignment of error.

the remarks in rebuttal closing argument likely reinforced a suggestion already made to the jury that an innocent person would have been more forthcoming when questioned by the police, even though defendant had been *Mirandized* at that time. Unlike in *Larson*, the prosecutor's comments were directed to the jury, not the judge, and they were among the last comments the jury heard before beginning deliberations. The trial court did not intervene with a curative instruction. Even if it had, "'the connection between silence and guilt is often too direct and too natural to be resisted.'" *White*, 303 Or at 342 n 7 (quoting *Lakeside v. Oregon,* 435 US 333, 345, 98 S Ct 1091, 55 L Ed 2d 319 (1978) (Stevens, J., dissenting)).

Considering the improper remarks made by the prosecutor, the fundamental nature of the right to remain silent, the timing of the remarks, and the likely insufficiency of a curative instruction, we conclude that the prosecutor's argument rose to the level of a legal error that was so prejudicial that it deprived defendant of a fair trial. That error is obvious and not reasonably in dispute, and it appears on the face of the record. Therefore, the error was a plain one. *Chitwood*, 370 Or at 321-22.

We turn to whether we should exercise our discretion to correct the error. "That discretion entails making a prudential call that takes into account an array of considerations, such as the competing interests of the parties, the nature of the case, the gravity of the error, and the ends of justice in the particular case." *Vanornum*, 354 Or at 630.

We recognize that defendant's jury trial was short and relatively straightforward. Defendant was charged with one count of second-degree theft and the jury heard testimony from only three witnesses. But, of course, even in a misdemeanor case like this one, defendant was entitled to a fair trial. As already explained, the prosecutor's remarks deprived defendant of a fair trial because those remarks invited the jury to view defendant's silence as evidence of his guilt. "The reasoning that supports our finding of plain error also urges our intervention to correct it." *Chitwood*, 370 Or at 322. Considering the nature of the case, the gravity of the error, and the ends of justice, we exercise our discretion

to correct the plain error. We reverse and remand defendant's conviction for second-degree theft.

Reversed and remanded.