650 June 17, 2026 No. 554

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DUANE ROBERT SNYDER,
*Defendant-Appellant.*

Multnomah County Circuit Court
20CR63487; A181161

Eric L. Dahlin, Judge.

Submitted January 21, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Carla Edmondson, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Robert M. Wilsey, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.*

HELLMAN, J.

Reversed and remanded.

_____
* Lagesen, C. J. *vice* Mooney, S. J.

**HELLMAN, J.**

Defendant appeals a judgment of conviction for one count of fourth-degree assault constituting domestic violence. In his only assignment of error, defendant contends that "the trial court erred when it denied defendant's motion for a mistrial." For the reasons below, we agree with defendant. We reverse and remand for further proceedings.

## I.   BACKGROUND

The relevant facts are undisputed. Defendant was charged with one count of fourth-degree assault constituting domestic violence after an alleged altercation with a person with whom he resided. The state's theory at trial was that defendant assaulted the complainant in the process of telling her that she needed to leave the home that she shared with defendant and his father. Defendant's theory at trial, as set forth in his opening statement, was that he told the complainant that she needed to leave the home and the complainant, who was on "supervised probation for a domestic violence assault," called 9-1-1 and lied about defendant assaulting her in an effort to "use the system in her favor."

During defendant's trial, an officer testified as to his conversation with defendant after the officer arrived at defendant's house to arrest defendant. As relevant to the issue on appeal, the officer testified that defendant "invoked his rights" after the officer "Mirandized" defendant:

"[PROSECUTOR:]   Okay. And so when you arrived at the [defendant's] residence, what did you do?

"[OFFICER:]   I—I confirmed [defendant's] cars that were there by running their license plates, and it did belong to him.

"[PROSECUTOR:]   Okay.

"[OFFICER:]   And then I knocked on the door and contacted him.

"[PROSECUTOR:]   Okay. And what did he say?

"[OFFICER:]   I asked him to step outside, and we placed him under arrest.

"[PROSECUTOR:]   Okay. And did you ask [defendant] if he touched or hit [the victim] at all?

"[OFFICER:]   I—I would—after my post Miranda, or—

"[PROSECUTOR:]   Yes.

"[OFFICER:]   I had Mirandized him, and he invoked his rights."

Given that testimony—and specifically the officer's reference to defendant's invocation of his *Miranda* rights—defendant moved for mistrial. Defendant argued that a mistrial was necessary because the state "clearly ask[ed] the officer about the Defendant invoking his right to remain silent." The trial court recognized that the officer's testimony was improper but indicated that it thought "a curative instruction would be appropriate" and "would actually resolve [the] issue." The trial court also noted its view that evidence that a defendant "invoked," at least in some circumstances, is "not that *** different than the instruction that [the court gives] to the jury about someone exercising their right to remain silent" at the end of trial when a defendant does not testify, insofar as that instruction is "in itself effectively the same as saying [the defendant] invoked."

The trial court also recognized, however, that a curative instruction might "draw more attention" to the improper testimony, and asked defendant to decide if he wanted the trial court to "give a curative instruction." The trial court noted that, if defendant did want a curative instruction, the court, the defense, and the state, could "talk about what the language would be."[1]

In response to the trial court offering a curative instruction, defendant noted that the officer's testimony was describing an "interview situation where [the prosecutor

_____

[1] In discussing the contours of such an instruction, the trial court noted that it could instruct the jury with an instruction that

"would say to the jury something that everyone's got a—everyone has a right to remain silent, and just as I would instruct the jury at the end of the trial if he doesn't testify that the—the jury should not infer anything about his silence and—and—and decision not to testify seems like a curative instruction to just remind the jury of the right to remain silent and that it's actually a good thing.

"People should actually exercise that constitutional right."

was] asking the officer *** how he interviewed *** the Defendant, and then [the officer] specifically said [defendant] invoked his right to remain silent." Defendant took the position that "no curative instruction would be enough to cure that prejudice" and an instruction would just "draw more attention" to the improper testimony and make the situation worse. The trial court then denied defendant's motion for mistrial without giving a curative instruction.

After another witness had begun her testimony, the court *sua sponte* returned to its ruling on defendant's motion for mistrial. Outside the presence of the jury, and with the parties, it listened to the audio recording of the officer's testimony. After listening to the audio recording and reviewing relevant case law, the trial court stated that it was struggling with "whether a curative instruction would be appropriate, or if this is just a situation where the Court of Appeals would say no curative instruction would be adequate." It noted that the officer's testimony, which reflected that "[d]efendant didn't answer any kind of question" about whether he hit the alleged victim "because he invoked" his right to remain silent, "certainly would suggest guilt" to a juror. The trial court concluded that the testimony was "clearly the kind of thing that requires some action," either a curative instruction or a mistrial.

However, the trial court ultimately adhered to its prior decision to deny defendant's motion for mistrial because defendant had declined a curative instruction, even though the trial court believed it could possibly "craft [a curative instruction] that would hopefully un-ring the bell" and that such an instruction would eliminate the need for a mistrial. In making that ruling, the trial court correctly recognized the lingering absence of direction in the case law regarding curative instructions; specifically, that "most of the time a curative instruction couldn't fix the issue [but that that] wouldn't necessarily mean that there [aren't] some times where a curative instruction could fix the issue." The trial court also correctly recognized the difficulty in creating an instruction that was not too "bland" and, at the same time, would not "draw additional attention to this and cause further harm *** for the defense case."

After the conclusion of the presentation of evidence and summation, the jury returned a guilty verdict on the single count of fourth-degree assault. This appeal followed.

As noted, in his only assignment of error, defendant contends that "the trial court erred when it denied defendant's motion for a mistrial."

## II.  ANALYSIS

### A.  *Standard of Review*

"When a party moves for a mistrial, *the trial court* must decide whether to grant the motion, deny the motion but take curative steps, or deny the motion without taking any curative steps." *State v. Northey*, 340 Or App 318, 330, 571 P3d 219 (2025) (emphasis added). Because the trial court, not this court, "is in the best position to assess the impact of the complained-of incident and to select the means (if any) necessary to correct any problem resulting from it," we review the trial court's decision among those three choices for abuse of discretion. *State v. Veatch*, 223 Or App 444, 462, 196 P3d 45 (2008) (internal quotation marks omitted). In that review, we take into consideration the "seriousness of the prejudice and the manner in which the court sought to cure the error, with the decisive issue [being whether defendant's ability to receive a fair trial was impaired." *State v. Kurz*, 342 Or App 772, 785, 577 P3d 866, *rev den*, 374 Or 616 (2025) (internal quotation marks and brackets omitted).

Notwithstanding the general discretion that trial courts have in ruling on a motion for mistrial, in some cases, "the prejudice to the accused created by an incident is so grave that a curative instruction is insufficient, and a mistrial is the only legally acceptable alternative." *State v. Evans*, 211 Or App 162, 166, 154 P3d 166 (2007), *aff'd*, 344 Or 358, 182 P3d 175 (2008). At the other end of the spectrum, there are cases where it is "within the trial court's discretion to decline to declare a mistrial in the wake of a potentially prejudicial incident," without giving a curative instruction, "if the court finds that the incident was sufficiently inadvertent and isolated so as to not compromise a fair trial." *Id.* at 168. And, lying in the middle of those two categories of cases, are cases where "the decision to deliver

curative instructions rather than to declare a mistrial remains within the ambit of the court's discretion." *Id.* at 167.

### B. *Law on Improper References to Invocation of Constitutional Rights*

A prosecutor is not permitted to comment on or solicit evidence concerning a defendant's invocation of a constitutional right under circumstances in which the jury is likely to draw a negative inference from the exercise of that right. *See State v. Durant*, 327 Or App 363, 368, 535 P3d 808 (2023), *rev den*, 374 Or 143 (2025) (so noting regarding comments made during closing argument); *State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600, *cert den*, 434 US 849 (1977) ("There is no doubt that it is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury."). That is because reference "to a defendant's exercise of a constitutional right" can "jeopardize[ ] the right to a fair trial if the jury was likely to infer that the defendant had exercised the right because he believed that he was guilty of the charged offense." *State v. Schumacher*, 315 Or App 298, 301, 500 P3d 698 (2021).

One such constitutional right—the right at issue in this case—is the right to remain silent, guaranteed under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution. *State v. Castillo*, 295 Or App 121, 127, 433 P3d 467 (2018), *rev den*, 364 Or 749 (2019) ("Under Article I, section 12, of the Oregon Constitution, individuals have a right against compelled self-incrimination in criminal prosecutions, including the right to remain silent."); *Miranda v. Arizona*, 384 US 436, 467-68, 86 S Ct 1602, 16 L Ed 2d 694 (1966) (recognizing that the Fifth Amendment includes a "right to remain silent").

It is usually the case that jurors will infer guilt from a defendant's invocation of the right to remain silent. *See State v. Ashbaugh*, 330 Or App 680, 690, 544 P3d 414, *rev den*, 372 Or 588 (2024) (recognizing that "the connection between silence and guilt is often too direct and too natural

to be resisted" by a jury (internal quotation marks omitted));
*see also State v. White*, 303 Or 333, 342 n 7, 736 P2d 552
(1987) ("For the judge or prosecutor to call it [a defendant's
silence] to the jury's attention has an undeniably adverse
effect on the defendant." (Quoting *Lakeside v. Oregon*, 435
US 333, 345, 98 S Ct 1091, 55 L Ed 2d 319 (1978) (Stevens,
J., dissenting); brackets in *White*.)). As a result, we "pre-
sume" that a prosecutor's reference "to a defendant's silence
* * * [is] harmful" to the defendant. *Ashbaugh*, 330 Or App
at 686; *see also State v. Larson*, 325 Or 15, 22, 933 P2d 958
(1997) (the "Oregon Constitution does not permit a prosecu-
tor to draw the jury's attention to a defendant's exercise of
the right to remain silent").

That said, not every reference during trial to a
defendant's exercise of a constitutional right is *per se* prej-
udicial. *See, e.g.*, *State v. Larson*, 325 Or 15, 24-25, 933 P2d
958 (1997) (concluding that "the context of the prosecutor's
improper comment was not one in which inferences prejudi-
cial to defendant were likely to have been drawn by the jury"
where the prosecutor "made only a single reference to defen-
dant's ability to testify" and, although "the jury was pres-
ent, the comment was directed to the judge, not to the jury,"
and was made in "frustration" in "the context of objecting
to defendant's repeated attempts to introduce inadmissible
hearsay").

C.   *Ruling on Motions for Mistrial*

If a defendant moves for a mistrial based on a pros-
ecutor referencing or eliciting evidence concerning a defen-
dant's invocation of a constitutional right, a trial court must
first determine whether the jury is likely to draw an inference
of guilt from that reference. *See id*. at 24-25; *Schumacher*,
315 Or App at 307. If the trial court determines that the jury
is *unlikely* to draw such an inference, because, for example,
the incident was "sufficiently inadvertent and isolated so as
to not compromise a fair trial," it may be permissible for
the trial court to "decline to declare a mistrial in the wake
of a potentially prejudicial incident," without taking cura-
tive steps. *See Evans*, 211 Or App at 168. If, however, as here,
the trial court determines that the jury is *likely* to draw an
inference of guilt from the invocation, the trial court's range

of permissible choices becomes constrained in two important ways.

First, when a defendant moves for mistrial based on a prosecutor referencing or eliciting evidence of a defendant's invocation of a constitutional right, from which the jury would likely draw an inference of guilt, it is error for the trial court to do "nothing." *Schumacher*, 315 Or App at 307 ("In light of our reversals in cases where the trial court did *something* to cure the prejudicial impact, it strikes us that, when a trial court does *nothing*, it would be error to affirm." (Emphases in original.)). As discussed further below, that is true even when "the defendant declines a curative instruction," because "it is the court, not defendant, that must decide whether and how to cure the prejudicial effect of improper testimony." *Id*. (internal quotation marks omitted); *see also State v. Alvord*, 118 Or App 111, 115, 846 P2d 432 (1993) ("Although it is normally the defendant's duty to request a curative instruction, the Supreme Court has said that, when a prosecutor has made an improper statement about a defendant's exercise of the right to remain silent, the trial court has a duty to allow a timely motion for a mistrial or to cure the effect of the improper comment by giving a proper instruction.").

Second, the ability of a trial court to deny the motion but take curative steps is cabined by the reality that in order for a curative instruction to be effective, it must achieve the "perhaps impossible" task of "negating the inference that the defendant invoked his or her rights because of his or her consciousness of guilt." *State v. Hunt*, 297 Or App 597, 606, 442 P3d 232 (2019). That task is perhaps impossible because, under our case law, as we understand it, in crafting such an instruction, the inference of guilt must be "negated" without (1) ignoring the inference and simply telling the jury to disregard the problematic statement, or (2) drawing additional attention to the inference, thereby potentially increasing the prejudice. *Compare State v. Osorno*, 264 Or App 742, 745, 333 P3d 1163 (2014) (curative instruction telling the jury to "disregard the last statement," as it was "not information that [the jury could] consider in deciding this case," after an officer testified that the defendant told him that she did not

"want to say anything incriminating," was insufficient to cure prejudice, because "no part of the instruction negated the inference that defendant made the statement [that she did not want to say anything incriminating] because she was conscious of her guilt"), *with State v. Hylton*, 316 Or App 270, 271, 501 P3d 1081 (2021) (curative instruction insufficient to cure prejudice where the trial court instructed the jury "not to draw an adverse inference from defendant's invocation" because the instruction, although "well-intended," may "well have exacerbated the adverse effect of the improper references" by "explicitly describ[ing] the adverse inference of guilt that the jury might reasonably draw from defendant's invocation of the right to remain silent").

Indeed, in *Ashbaugh*, a case in which the defendant did not object or move for a mistrial, we reversed a conviction due to the prosecutor referring to the defendant's "exercise of his right to remain silent," noting the "likely insufficiency of a curative instruction" had defendant objected and had a curative instruction been given. 330 Or App at 681, 690. *Ashbaugh* is particularly significant because, as noted, the defendant in *Ashbaugh* did not object or move for a mistrial and, therefore, the question before us was whether "*any* curative instruction by the trial court would \* \* \* have been effective." *State v. Perez*, 373 Or 591, 606, 568 P3d 940 (2025) (describing standard of review in such circumstance under *State v. Chitwood*, 370 Or 305, 312, 518 P3d 903 (2022) (emphasis added)).

Thus, the practical effect of our case law is that declaring a mistrial is likely the only permissible exercise of the trial court's discretion when the following conditions are met: (1) the defendant moves for a mistrial; (2) the motion is based on an impermissible reference to defendant's invocation of constitutional rights; and (3) the trial court determines that the jury is likely to infer guilt from that impermissible reference. That is because, as explained above, if trial courts do nothing in that circumstance—even when they do nothing because *the defendant* objects to a curative instruction being given—the result is likely to be reversal on appeal. *Schumacher*, 315 Or App at 307. And if a trial court attempts to cure the prejudice by giving a curative

instruction, it is likely that, on appeal, we will conclude that the instruction was insufficient to cure any prejudice; again, leading to a reversal on appeal. As noted, crafting a curative instruction in such a circumstance is a "perhaps impossible" task. *Hunt*, 297 Or App at 606.

We hope that our clear statements about the practical effect of our case law will lead prosecutors to intensify their efforts to make sure that they do not "elicit any evidence concerning [a] defendant's exercise of [their] constitutional rights," *Alvord*, 118 Or App at 116 (recognizing the existence of that duty), including through preparation of law enforcement witnesses, so that all defendants receive a fair trial. It is also our hope that providing clarity in the law will support and encourage trial courts, where appropriate, in their decisions to grant motions for mistrial. That is because, although we have frequently stated that "a mistrial is a drastic remedy to be avoided," *e.g.*, *Kurz*, 342 Or App at 786 (internal quotation marks omitted), it is also the case that a trial court giving an ineffectual curative instruction or no curative instruction at all after a prejudicial reference to a defendant's invocation of a constitutional right is made will frequently lead to reversal on appeal.[2] That leads to unnecessary delays in the resolution of cases, which is harmful for victims, the accused, and society more broadly. *See, e.g.*, *Barker v. Wingo*, 407 US 514, 527, 532, 92 S Ct 2182, 33 L Ed 2d 101 (1972) (recognizing both that "society has a particular interest in bringing swift prosecutions" and that delay in bringing a case to trial can cause prejudice to a defendant).

D.   *Application*

Having described the legal framework in which this appeal comes before us, we turn to our analysis. As noted, defendant contends that the trial court abused its discretion when it denied his motion for a mistrial. In response, the state contends that, to the extent the trial court erred, it was only because defendant invited that error by declining

---

[2] We observe that granting a mistrial also avoids the unusual and difficult situation when a trial court is forced to override a defendant's trial strategy by giving a curative instruction to address a prejudicial error on the part of the state.

the trial court's offer to give a curative instruction. We address the state's invited error argument before turning to the merits.

### 1.   *Invited error*

As an initial matter, we reject the state's invited error argument because it is foreclosed by our analysis in *Schumacher*.

In *Schumacher*, after an officer testified to the defendant's invocation of the right to counsel, the defendant moved to strike the testimony, and the court noted that it would offer a "curative instruction, which I would envision [the defendant] preparing." *Id.* at 300. The defendant then moved for a mistrial, and the state replied "that a curative instruction would address the issue, and that if it had been error, the error was 'harmless.'" *Id.* The court "agreed with the state and denied the motion for mistrial." *Id.* Later, near the end of trial, "out of the jury's presence, the court asked defendant if he had 'put together some kind of a curative instruction'" and "defendant replied that he had decided not to offer one because he would 'rather not emphasize it more to the jury.'" *Id.* at 300-01. After he was convicted, the defendant appealed the resulting judgment, assigning error to the trial court's denial of his motion for a mistrial. *Id.* at 299.

We reversed, concluding that the trial court erred. We first explained that the jury "could have inferred from the officer's mention of defendant's invocation" and the circumstances thereof that the defendant's "request for a lawyer was a tacit admission of guilt." *Id.* at 304. We then explained that, "[i]n light of our reversals in cases where the trial court did *something* to cure the prejudicial impact [of improper testimony], it strikes us that, when a trial court does *nothing*, it would be error to affirm," even "when the defendant declines a curative instruction." *Id.* at 307 (emphases in original). That is because when a defendant moves for mistrial on the basis of improper and prejudicial testimony—at least when the testimony has been elicited by the prosecutor—it is "the court that must decide *whether* and *how* to cure the prejudicial effect of improper testimony," and on appeal "we

evaluate the trial court's decision on the matter, rather than defendant's." *Id.* at 306-07 (emphases added).

We further explained in *Schumacher* that, "although it is true that the trial court is in the best position to assess the impact of the complained-of incident and to select the means necessary to correct any problem resulting from it," the trial court "abuses its discretion when it selects a means that does not produce a permissible, legally correct outcome," which is one where "the state did not benefit from an inference that penalized defendant's exercise of a constitutional right." *Id.* at 307.

Here, as in *Schumacher*, when faced with defendant's motion for mistrial, it was the trial court (and not defendant) that was required to "decide whether and how to cure the prejudicial effect of improper testimony." *Id.* Under *Schumacher* we are thus tasked with evaluating "trial court's decision on the matter, rather than defendant's." *Id.* at 306. The question before us is whether the trial court's decision resulted in a "legally correct outcome," which is one where "the state did not benefit from an inference that penalized defendant's exercise of a constitutional right." *Id.* at 307. Defendant neither invited the improper testimony that penalized him for the exercise of his constitutional right to remain silent nor invited the denial of his motion for mistrial.[3] Thus, we reject the state's invited error argument as foreclosed by *Schumacher*.

In seeking a different result, the state argues that *Schumacher* is inapposite because it "stands for the proposition that a trial court, confronted with testimony that a defendant invoked a constitutional right that may give rise to an inference of the defendant's guilt, may not put the burden of crafting a curative instruction on the defendant and then do nothing if the defendant continues to request

---

[3] In that regard, we note that defendant, like the defendant in *Schumacher*, assigns error to the trial court's denial of his motion for a mistrial, not to the court's failure to give a curative instruction. We have routinely analyzed the merits of a mistrial ruling, even when the defendant refused a curative instruction. *See, e.g.*, *Evans*, 211 Or App at 169 (recognizing that defendant declined a curative instruction but proceeding to analyze the merits of the mistrial ruling). It may be that, if defendant had assigned error to the court's failure to give a curative instruction, that error, if cognizable, would have been invited. But that issue is not before us.

a mistrial." Although the state accurately points to factual distinctions between this case and *Schumacher*, those differences do not undercut the holding of *Schumacher* that it is the trial court—and not the defendant—that is required to "decide whether and how to cure the prejudicial effect of improper testimony" after a defendant moves for mistrial. *Id.* at 307.[4]

   2.  *The merits*

      Having rejected the state's invited error argument, we turn to the merits. The threshold question for our analysis of the merits is whether "the jury was likely to infer that the defendant had exercised the right because he believed that he was guilty of the charged offense." *Id.* at 304. Here, the trial court expressly determined that defendant's invocation under the circumstances "certainly would suggest guilt." We see no error in that assessment. *See id.* (noting that even a "single statement apparently unintentionally elicited" may require a mistrial "unless the surrounding context of the reference is of the kind that would draw the jury's attention away from the inference of guilt").

      Therefore, we proceed to assess whether the trial court's decision not to provide a curative instruction and to deny the motion for a mistrial amounted to an abuse of discretion. We conclude that it did, because, as described above, taking no action to cure the prejudicial impact of evidence of an invocation of constitutional rights amounts to an abuse of discretion. *Id.* at 307-08. Consequently, we reverse and remand.

      Reversed and remanded.

---

[4] Another factual distinction between this case and *Schumacher* is that in *Schumacher* the defendant was asked *near the end of trial* if he had prepared a curative instruction and we concluded that, at that point, "a curative instruction *** could not 'unring the bell'" because it would have been "not timely." *See id.* at 305, 307. But that factual difference between this case and *Schumacher* also does not undercut the rationale of *Schumacher* as applied to this case.